ESTATE OF MARSHAL L. NOEL, RUTH M. NOEL, EXECUTRIX, AND WILLIAM H. FRANTZ, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 645–66. Filed July 31, 1968.

*Edward F. Merrey, Jr.*, for the petitioners.
*Julius M. Jacobs*, for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax for 1957 in the amount of $9,720.63. The issue is whether petitioner realized income in respect of a decedent in 1957

within the meaning of section 691, I.R.C. 1954,[1] when certain debentures owned by decedent were used by the estate to satisfy an outstanding debt of the decedent.

FINDINGS OF FACT

Some of the facts were stipulated and they are so found.

Marshal L. Noel, a resident of Ridgewood, N.J., died on June 20, 1956, leaving a last will and testament which was probated on July 27, 1956, in the Surrogate's Court of Bergen County, N.J. The estate tax return of the decedent's estate was filed on November 20, 1957, with the district director of internal revenue, Newark, N.J. The fiduciary income tax return of the decedent's estate for the taxable year 1957 was filed with the district director of internal revenue, Newark, N.J.

At the time of his death the decedent owned 20 non-interest-bearing debenture bonds, each in the face amount of $5,000, issued by Equipment Investors, Inc., dated as of January 1, 1951, and due on January 1, 1956. The debentures were registered in decedent's name. Decedent had purchased the 20 debentures in December 1950 at a cost of $3,750 per debenture, or a total of $75,000, and each debenture was payable at maturity in the amount of $5,000. At the time decedent purchased said debentures and up to the date of his death he was the owner of 50 percent of the issued and outstanding stock of Equipment Investors, Inc., and was president of the corporation. At the date of his death the decedent also owned 175 shares of the 350 issued and outstanding shares of common stock of Frantz Tractor Co., Inc., and, until shortly before his death, he was president of that corporation.

Frantz Tractor Co., Inc, Frantz Equipment Co., Inc., and Eastcoast Equipment Co., Inc., were dealers in tractors and other equipment. Equipment Investors, Inc., was formed to finance the operations of the three dealer corporations and to handle the notes and other financial paper generated by the dealers' sales to customers. The 20 debenture bonds owned by decedent were part of a total of $295,000 face amount of debenture bonds of Equipment Investors, Inc., which were issued and outstanding as of June 30, 1956. Debenture bonds of Equipment Investors, Inc., were also held by Frantz Tractor Co., Inc., Frantz Equipment Co., Inc., and Eastcoast Equipment Co., Inc.

Late in 1950 Equipment Investors, Inc., executed an agreement with the Corn Exchange Bank [2] under which the bank extended a line of credit to Equipment Investors, Inc., in the maximum amount of

[1] All section references will be to the Internal Revenue Code of 1954, as amended, unless otherwise noted.
[2] By the time of the trial the Corn Exchange Bank had gone through several mergers and was known as the Chemical Bank New York Trust Co.

$750,000 and in 1953 this was increased to $2,500,000. The bank opened two restricted accounts, special account No. 1 and special account No. 2, for Equipment Investors, Inc., which were used as follows: Loans made by the bank to Equipment Investors, Inc., were deposited in special account No. 1 for the specific purpose of financing the purchases of machinery and equipment by the three dealer corporations from the manufacturers. Payments received on conditional sales of equipment by the dealer corporations from their customers were deposited in special account No. 2 and periodically the amounts deposited in this account were used to reduce the amount of loans outstanding as indicated in special account No. 1. Equipment Investors, Inc., gave its notes to the bank for the loans the corporation obtained. A portion of the loans evidenced by the notes was withheld by the bank as a reserve and this reserve was maintained in special account No. 2 so that this special account had the elements of a reserve account as well as a restricted deposit account. Equipment Investors, Inc., also kept a general operating account at the bank in addition to the two special accounts.

In addition to its own promissory notes, Equipment Investors, Inc., pledged as security for the loans the installment notes and conditional sales contracts received by the dealer corporations from purchasers of equipment. It was the practice of the Corn Exchange Bank, when it made loans to closely held corporations, to seek subordination of any outstanding debts owed by the corporation to principal officers or to stockholders.

Decedent executed a subordination agreement on the bank's form dated December 27, 1950, covering the debentures which had been issued by Equipment Investors, Inc., to decedent and subsequently the three dealer corporations executed similar subordination agreements dated January 31, 1952, covering the debentures held by them. Under these agreements the debentures held by decedent and the dealer corporations were subordinated to the bank loans made to Equipment Investors, Inc.

No payments were made by Equipment Investors, Inc., on the debentures held by decedent and the dealer corporations in the face amount of $295,000 when they became due on January 1, 1956. Nor were any payments made on such debentures at any time during the year 1956. The balance sheet of Equipment Investors, Inc., as of December 31, 1955, showed total assets of $3,347,050.67 which included cash in bank and on hand in the amount of $554,145.10 and total loans receivable from Frantz Equipment Co., Inc., Frantz Tractor Co., Inc., and East-coast Equipment Co., Inc., of $2,705,098.91 (less estimated uncollectibles in the amount of $48,000). Liabilities included notes payable to

the Corn Exchange Bank in excess of $1,780,000 and the 5-year debenture bonds due January 1, 1956, in the amount of $295,000. The report of the public accountants who prepared the balance sheet as of December 31, 1955, stated that the debenture bonds in the amount of $295,000 "are subordinated to loans of the Chemical Corn Exchange Bank, and therefore are not shown as current liabilities." Capital stock was shown in the amount of $50,000 and retained earnings were indicated in the amount of $40,976.70.

The balance sheet of Equipment Investors, Inc., as of December 31, 1956, showed total assets of $1,034,314.40, which included cash in bank and on hand in the amount of $172,328.59 and total loans receivable from the three dealer corporations of $822,899.77 (less estimated uncollectibles in the amount of $57,749.97). Liabilities included notes payable to the Corn Exchange Bank in excess of $380,000, the 5-year debenture bonds in the amount of $295,000 due January 1, 1956, and shown on the balance sheet as "Subordinated," and accrued interest in the amount of $14,750. Capital stock was shown in the amount of $50,000 and retained earnings were indicated in the amount of $18,596.93.

The item "cash" shown on the balance sheet of Equipment Investors, Inc., as of December 31, 1955, in the amount of $554,145.10 included the balances in special account No. 1 and special account No. 2 maintained by Equipment Investors, Inc., with the Corn Exchange Bank in connection with the loan agreement.

Decedent was indebted to Frantz Tractor Co., Inc., in the principal amount of $170,000. In an agreement dated June 18, 1957, between the decedent's estate and Frantz Tractor Co., Inc., the corporation agreed to accept the following assets in full satisfaction of the $170,000 obligation: (1) 175 shares of common stock of Frantz Tractor Co., Inc., held by decedent at the date of his death, $62,873; (2) the "subordinated debentures" of Equipment Investors, Inc., in the face amount of $100,000 held by decedent at the date of his death, plus accrued interest of $3,750; and (3) cash in the amount of $3,377.

The debentures held by decedent were listed in Schedule B of the estate tax return with a value of $100,000 plus accrued interest in the amount of $3,750. The 1957 Federal fiduciary income tax return filed by the estate on a cash basis showed no income and no income tax due. Respondent determined that the decedent's estate realized $28,750 in 1957 as income in respect of a decedent under section 691 when the Equipment Investors, Inc., debentures were assigned to Frantz Tractor Co., Inc., as part of the repayment of the $170,000 obligation. The above amount of $28,750 included accrued interest of $3,750. Respondent, in an amendment to his owner, alleged

that the portion of said interest accrued from January 1, 1956, to the date of decedent's death, June 20, 1956, was taxable as income in respect of a decedent under section 691 while the portion that accrued subsequent to the date of decedent's death was taxable as interest under section 61(a)(4).

OPINION

Section 691 provides that the "amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of * * * the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent."

Respondent contends that the estate realized the earned discount of $25,000 plus accrued interest on the debentures in the amount of $3,750 in 1957 when the estate assigned the matured debentures (face amount, $100,000) plus accrued interest to the Frantz Tractor Co., Inc., in partial satisfaction of the estate's $170,000 obligation to the corporation. It is petitioner's position that the earned discount of $25,000 was realized by decedent on January 1, 1956, when the debentures became due and payable and that such amount was properly includable in decedent's gross income for that year. As to the balance of $3,750 the petitioner appears to question whether it was intended as interest but concedes that if in fact it was payable as interest, then it would be taxable in 1957. Petitioner has the burden of proof.

It is undisputed that the decedent received no payments from Equipment Investors, Inc., on his 20 original issue discount debentures when they became due on January 1, 1956, and that the full amounts due on such debentures still remained unpaid as of December 31, 1956. Since the decedent and the estate were cash basis taxpayers, the earned discount on the debentures would not be properly includable in income for 1956 under section 451(a)[3] unless the amounts due, if not actually paid, were constructively received in 1956. Cf. *Levin* v. *United States*, 373 F. 2d 434.

Petitioner explicitly disavows any reliance upon the doctrine of constructive receipt to establish that the earned discount was includable in decedent's income in 1956. We agree with petitioner that such doctrine is inapplicable here, since the record amply demonstrates that on the due date of the debentures they were subordinated to outstanding bank loans and, furthermore, it does not appear that

[3] Sec. 451(a) provides that "The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period."

the debtor corporation had the unrestricted funds available to make any payments on the outstanding debentures when they fell due on January 1, 1956. In *Samuel Keller Jacobs*, 22 B.T.A. 1166, it was stated that—

> The test as to constructive receipt is whether the debtor has funds standing to the credit of the taxpayer which the debtor is able to pay and which are available and unqualifiedly subject to the taxpayer's demand. * * *

Similarly, it was stated in *C. E. Gullett*, 31 B.T.A. 1067, that—

> amounts due from a corporation but unpaid, are not to be included in the income of an individual reporting his income on a cash receipts basis unless it appears that the money was available to him, that the corporation was able and ready to pay him, that his right to receive was not restricted, and that his failure to receive resulted from exercise of his own choice. * * *

The main thrust of petitioner's argument is that as a matter of law the entire increment of the original issue discount non-interest-bearing debentures held by decedent, a cash basis taxpayer, who had not elected to treat the increment as cash received in each year under section 454(a),[4] was taxable income to the decedent in the year the

---

[4] SEC. 454. OBLIGATIONS ISSUED AT DISCOUNT.

(a) NON-INTEREST-BEARING OBLIGATIONS ISSUED AT A DISCOUNT.—If, in the case of a taxpayer owning any non-interest-bearing obligation issued at a discount and redeemable for fixed amounts increasing at stated intervals or owning an obligation described in paragraph (2) of subsection (c), the increase in the redemption price of such obligation occurring in the taxable year does not (under the method of accounting used in computing his taxable income) constitute income to him in such year, such taxpayer may, at his election made in his return for any taxable year, treat such increase as income, received in such taxable year. If any such election is made with respect of any such obligation, it shall apply also to all such obligations owned by the taxpayer at the beginning of the first taxable year to which it applies and to all such obligations thereafter acquired by him and shall be binding for all subsequent taxable years, unless on application by the taxpayer the Secretary or his delegate permits him, subject to such conditions as the Secretary or his delegate deems necessary, to change to a different method. In the case of any such obligations owned by the taxpayer at the beginning of the first taxable year to which his election applies, the increase in the redemption price of such obligations occurring between the date of acquisition (or, in the case of an obligation described in paragraph (2) of subsection (c), the date of acquisition of the series E bond involved) and the first day of such taxable year shall also be treated as income received in such taxable year.

\* \* \* \* \* \* \*

(c) MATURED UNITED STATES SAVINGS BONDS.—In the case of a taxpayer who—

(1) holds a series E United States savings bond at the date of maturity, and

(2) pursuant to regulations prescribed under the Second Liberty Bond Act (A) retains his investment in such series E bond in an obligation of the United States, other than a current income obligation, or (B) exchanges such series E bond for another non-transferable obligation of the United States in an exchange upon which gain or loss is not recognized because of section 1037 (or so much of section 1031 as relates to section 1037),

the increase in redemption value (to the extent not previously includible in gross income) in excess of the amount paid for such series E bond shall be includible in gross income in the taxable year in which the obligation is finally redeemed or in the taxable year of final maturity, whichever is earlier. This subsection shall not apply to a corporation, and shall not apply in the case of any taxable year for which the taxpayer's taxable income is computed under an accrual method of accounting or for which an election made by the taxpayer under subsection (a) applies.

debentures matured. Petitioner appears to rely on section 454 to support this theory. His argument is that under *United States* v. *Midland-Ross Corp.*, 381 U.S. 54, the increment is taxable as interest for the use of money and decedent's property right therein became vested in decedent when the debentures matured on January 1, 1956, at which time he no longer had the right to make an election under section 454(a). We believe that petitioner's reliance on section 454 is misplaced.

Section 454(a) merely grants to a cash basis taxpayer owning any "non-interest-bearing obligation issued at a discount and redeemable for fixed amounts increasing at stated intervals," or owning certain U.S. Government obligations, an election to treat the periodic increases in redemption price as income received in the taxable year in which such increases occur. The debentures held by decedent were redeemable for fixed amounts which increased at stated intervals, but petitioner concedes that decedent did not make any election under section 454(a) and that no part of the annual increments accruing prior to the due date was ever reported by decedent as income. However, petitioner reads into the statute a congressional intent that, absent any such election by a cash basis taxpayer, the entire earned discount would automatically become taxable income in the year when the obligation became due.

We cannot agree. Section 454(a) does not provide that earned discount on *corporate* obligations becomes taxable upon maturity. Nor can such a rule be inferred simply because an election is granted to cash basis taxpayers holding such obligations to include in income the periodic increases in redemption value. We think it is significant that section 454(c) which is limited to matured U.S. savings bonds explicitly provides that "the increase in redemption value [absent an election under section 454(a)] * * * shall be includible in gross income in the taxable year in which the obligation is finally redeemed or in the taxable year of final maturity, whichever is earlier." No such rule is provided in the case of matured *corporate* obligations and we see no justification, in view of the explicitness of the statutory language, to extend the rule to such obligations. We might add that the differences in the two kinds of obligations warrant a difference in their tax treatment upon maturity.

As heretofore noted, under section 451(a) the increment on the debentures would not be includable in the income of decedent, a cash

basis taxpayer, in 1956 unless actually or constructively received by him in 1956; and the record does not support either actual or constructive receipt by decedent prior to his death in 1956. On brief, even though he disavows any reliance on the doctrine of constructive receipt, petitioner devotes considerable time to the argument that respondent had the burden of proving that the increment was taxable to petitioner in 1957. This is based on the theory that petitioner having shown that the debentures became due in 1956, the burden was on respondent to show that the increment was not taxable to decedent in 1956, which respondent allegedly failed to do. Even if this argument was well founded, which we do not believe it is, we think the record as a whole, although not as complete as we would like it to be, supports respondent's position that because of the limitations and restrictions on the payments of the debentures decedent could not have required payment of his debentures before his death.

As to the amount of $3,750 the petitioner agrees that it would be taxable in 1957 if it was in fact interest. We believe that the record clearly establishes that, subsequent to the due date of the debentures on January 1, 1956, Equipment Investors, Inc., acknowledged an obligation to pay interest on the outstanding debentures. In the corporation's balance sheet as of June 30, 1956, there is shown under liabilities the amount of $7,375 as accrued interest at 5 percent on the 5-year debenture bonds in the total face amount of $295,000, and on the corporation's balance sheet as of December 31, 1956, accrued interest on such debenture bonds is shown in the amount of $14,750. Moreover, the agreement dated June 18, 1957, executed by Frantz Tractor Co., Inc., and the decedent's estate in which the matured debentures were accepted by the corporation in partial settlement of the estate's $170,000 obligation to the corporation, the amount of $3,750 was expressly referred to as accrued interest on the debentures. There is nothing in the record to support petitioner's suggestion on brief that the amount of $3,750 represented anything other than interest.

We agree with respondent that only the segment of interest attributable to the period prior to decedent's death on June 20, 1956, is properly taxable as income in respect of a decedent under section 691 while the remaining portion is taxable as interest under section 61(a)(4). This distinction however does not affect the tax treatment of the total amount since, under both sections of the Code, the relevant amounts are taxable to the estate as ordinary income.

We sustain respondent on this issue.

*Decision will be entered for the respondent.*