T.C. Memo. 1998-220


UNITED STATES TAX COURT


WILLIAM J. AND SANDRA D. HEITZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

EXACTO SPRING CORP., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 27151-96, 27152-96.          Filed June 24, 1998.


<u>Robert E. Dallman</u>, <u>Vincent J. Beres</u>, <u>Michael G. Goller</u>,
<u>Joseph M. Maier</u>, and <u>Joseph E. Bender</u>, for petitioners.

<u>George W. Bezold</u>, <u>Frederic J. Fernandez</u>, <u>Mark J. Miller</u>,
<u>Michael F. O'Donnell</u>, and <u>Christa A. Gruber</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent, by means of a statutory notice of deficiency, determined the following income tax deficiencies and section 6662(a)[1] penalties with respect to petitioners:

<u>William J. and Sandra D. Heitz</u>

| <u>Year</u> | <u>Deficiency</u> | Penalty<br><u>Sec. 6662</u> |
|---|---|---|
| 1992 | $31,592 | $6,318 |
| 1993 | 43,283 | 8,657 |

<u>Exacto Spring Corp.</u>

| Year<br><u>Ended</u> | <u>Deficiency</u> | Penalty<br><u>Sec. 6662</u> |
|---|---|---|
| 5/31/93 | $868,886 | $173,777 |
| 5/31/94 | 686,940 | 137,388 |

These two cases were consolidated for trial, briefing, and opinion.[2]  After concessions, the issues for our consideration are:  (1) The amount that Exacto Spring Corp. (Exacto) is entitled to deduct as reasonable compensation to William Heitz for its taxable years ending May 31, 1993 and 1994; (2) whether Exacto is liable for accuracy-related penalties with respect to the claimed deductions for the compensation to William Heitz; (3) whether William and Sandra Heitz constructively received interest income of $87,056 and $106,903 for the taxable years 1992 and

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years under consideration, and all Rule references are to this Court's Rules of Practice and Procedure.

[2] Unless otherwise indicated, all references to petitioner are to Exacto Spring Corp.

1993, respectively; and (4) whether William and Sandra Heitz are liable for accuracy-related penalties.

FINDINGS OF FACT[3]

1.  Reasonable Compensation

Exacto was founded in 1960 by petitioner William Heitz (Mr. Heitz), Kenneth Quillen (Mr. Quillen), and William Greene (Mr. Greene) in Rockford, Illinois.  In 1964, Exacto was moved from Rockford, Illinois, to the present site in Grafton, Wisconsin.

Exacto was initially operated as a partnership and was owned 60 percent by Mr. Heitz, 20 percent by Mr. Greene, and 20 percent by Mr. Quillen.  Mr. Quillen and Mr. Greene each contributed $1,000 to the partnership, and Mr. Heitz contributed $7,000. Exacto was incorporated in 1962.  From incorporation through 1993, Exacto's common stock was owned by Mr. Heitz (60 percent), Mr. Quillen (20 percent), and Mr. Greene (20 percent).  In 1993 and again in 1994, Mr. Heitz gave some of his Exacto stock to each of his two children, reducing his ownership in Exacto to 55 percent.

Mr. Heitz obtained a bachelor of science degree in mechanical engineering from Purdue University in 1952.  In 1955, Mr. Heitz was hired by Midwest Spring Co. as an engineer.  Mr. Heitz left Midwest Spring Co. after 4 years and went to work at

---

[3] The stipulation of facts and the attached exhibits are incorporated by this reference.

Rockford Spring Co., where he met Mr. Greene and Mr. Quillen.  In 1960, Mr. Heitz, Mr. Greene, and Mr. Quillen left Rockford Spring Co. to form Exacto.

Exacto manufactures fine-wire precision springs for various applications.  Typically, Exacto will act as a consultant for its customers in designing and engineering springs for a specific function.  In addition, Exacto designs and manufactures spring measuring and spring gauge equipment, and designs and develops spring packaging equipment.  Exacto manufactures springs that are used in highly sensitive equipment including:  Automobile airbags, fuel injection systems, and computer keyboards.

Mr. Heitz is a technical expert in the area of spring design and was personally involved in the development of a completely automated line of spring-making machines.  Exacto was the first spring maker in the country to develop a completely automated spring-making plant.  Mr. Heitz is constantly improving Exacto's production process by making adjustments to the automated line.  There are very few engineers who specialize in spring design; therefore Mr. Heitz also served as a teacher for Exacto's sales and engineering department.

Mr. Heitz has contributed significantly to improving the efficiency of Exacto's production process.  In 1960, Mr. Heitz introduced Exacto to statistical process control, which is a quality control technique that operates by taking random samples.

Statistical process control insures that approximately 99.9-percent of Exacto's springs will be within specifications.

Mr. Heitz has also worked extensively in the area of spring packaging. In 1992, Mr. Heitz developed magnetic boards designed to have springs adhere to the board during shipment. This technique helped reduce spring tangling and damage during shipment and eased customer product assembly. Mr. Heitz also helped develop the idea of using tubes to ship and disburse springs. The development and improvement of Exacto's spring packaging is an ongoing process.

Mr. Heitz has been the president of Exacto since 1976. As president, Mr. Heitz was responsible for overall company finances, management, and direction. Since Exacto's inception, Mr. Heitz' greatest contribution to Exacto has been in the areas of spring development and sales. Mr. Heitz has the unique ability to target a client, identify a way the client could benefit from a specific spring application, and then design the spring that could perform that application. During the years at issue, Mr. Heitz was responsible for soliciting 65 to 70 percent of Exacto's sales.

Hickory Sales Corp. (Hickory) was established during 1985. Until June 15, 1994, all of Hickory's shares were owned equally by Dennis Backhaus and Daniel Linsley, who were employees of Exacto. Hickory acted as a sales representative for Exacto. For

the years at issue, Hickory had no income other than commissions and consulting fees paid by Exacto.  Hickory's only employee during the years at issue was Mr. Heitz.  Mr. Heitz spent 10 to 20 percent of his time working for Hickory.  Mr. Heitz received the following salary from Hickory:

| Fiscal Year | Salary |
|---|---|
| Jan. 31, 1992 | $100,000 |
| Jan. 31, 1993 | 200,000 |
| Jan. 31, 1994 | 100,000 |

Exacto's executive management team consisted of only five individuals:  Daniel Linsley, chief financial officer; Dennis Backhaus, director of the Sales and Engineering Department; Mr. Quillen; Mr. Greene; and Mr. Heitz.  Mr. Quillen was the secretary and treasurer of the company until his retirement in 1988.  Mr. Quillen was also in charge of shipping, receiving, and warehousing for Exacto.  Mr. Greene was the plant manager for Exacto and also assisted Mr. Heitz in research and development. After Mr. Quillen's retirement in 1988, Mr. Greene became the secretary and treasurer of Exacto and assumed the position of director of shipping, receiving, and warehousing until his retirement in 1991.

Before the retirements of Mr. Greene and Mr. Quillen, Mr. Heitz worked approximately 60 to 70 hours per week.  In addition, he often worked at home on Sundays.  After the retirements of both Mr. Greene and Mr. Quillen, Mr. Heitz assumed more of the

management responsibilities at Exacto, and, as a result, his hours increased from 1991 through early 1994.

From its inception in 1960 through 1994, Exacto experienced significant growth. The original building occupied by Exacto in Grafton, Wisconsin, was approximately 4,000 square feet when it was initially built in 1964. By the end of fiscal year (FY) 1994, Exacto's facility was approximately 52,000 square feet. The additions were made to the facility to accommodate the growth of Exacto's sales and operations. Exacto continued to grow following the retirements of Mr. Quillen and Mr. Greene. In 1987, Exacto employed an average of 90 individuals. During FY 1993 and FY 1994, Exacto employed an average of 102 and 122 employees, respectively. Exacto also experienced a sharp increase in gross sales during the period when Mr. Heitz assumed sole responsibility for the administration and operation of the company. From FY 1991 to FY 1994, Exacto's gross sales increased from $8,923,374 to $16,162,119.

Exacto did not pay dividends from FY 1989 to FY 1994. From FY 1973 to FY 1988, Exacto paid $145,000 in dividends. Shareholder equity increased from $9,000 (Mr. Heitz', Mr. Greene's, and Mr. Quillen's initial capital investment) to $7,550,000 in 1989 (the date of Exacto's last appraisal). From FY 1988 to FY 1994, Exacto paid compensation to its shareholder executives in the following amounts:

|  |  | Heitz | Greene | Quillen |
|---|---|---|---|---|
| FY Ended | | Compensation | Compensation | Compensation |
| May 31, 1988 | | $300,000 | $300,000 | $300,000 |
| May 31, 1989 | | 350,000 | 450,000 | 100,000 |
| May 31, 1990 | | 1,300,000 | 300,000 | --- |
| May 31, 1991 | | 1,200,000 | --- | --- |
| May 31, 1992 | | 1,400,000 | --- | --- |
| May 31, 1993 | | 1,300,000 | --- | --- |
| May 31, 1994 | | 1,000,000 | --- | --- |

In FY's 1993 and 1994, Mr. Heitz' compensation as a percentage of Exacto's gross receipts was approximately 11 percent and 6 percent, respectively.

Exacto did not have a written employment contract with Mr. Heitz or a stated formula for determining his compensation. During the years in issue, Exacto's board of directors comprised Mr. Heitz, Mr. Quillen, Mr. Greene, and Mr. Linsley. The board of directors approved the level of compensation paid to Mr. Heitz on the basis of his performance. Exacto determined and paid Mr. Heitz' compensation in December, just over halfway through its fiscal year. Mr. Heitz' compensation was reduced in FY 1994 from $1,300,000 to $1 million to reflect the fact that he would be taking time off recuperating from surgery, which took place in December 1993. Respondent determined $380,952 and $400,000 as reasonable compensation for Mr. Heitz for taxable years ended May 31, 1993 and 1994, respectively, and disallowed Exacto's claimed deductions for the excess.

2.  Interest Income

During the calendar years 1992 and 1993, Exacto was indebted to Mr. and Mrs. Heitz in the approximate amount of $2 million.[4] In 1992 and 1993, Exacto made monthly accruals of the interest due to Mr. and Mrs. Heitz in the amounts of $217,056 and $268,955, respectively. These monthly accruals were deducted by Exacto in the appropriate fiscal years.

Exacto made payments in varying amounts and at irregular intervals on the loans from Mr. and Mrs. Heitz. Payments designated as interest were made in lump sums and only in May and/or December of each year. Mr. and Mrs. Heitz reported $130,000 and $162,000 as the amount of interest paid to them by Exacto during the years 1992 and 1993, respectively. However, because the interest was not paid until several months after it was accrued by Exacto, Mr. and Mrs. Heitz did not report $87,056 ($217,056 - $130,000) and $106,903 ($268,955 - $162,052) accrued and deducted by Exacto for those calendar years.

Mr. Heitz, as president and chief executive officer of Exacto, was responsible for overall company finances. On

---

[4] On May 1, 1993, Mr. Heitz transferred the note receivable to the name of Mrs. Heitz. The amount of Exacto's indebtedness to Mr. and Mrs. Heitz fluctuated in 1992 and 1993 as Exacto made principal payments or borrowed additional funds from Mr. and Mrs. Heitz.

December 31, 1992 and 1993, Exacto held cash, cash equivalents, and marketable securities in the amounts of $2,792,123 and $3,129,900, respectively. Respondent determined that Mr. and Mrs. Heitz had constructively received interest income in the amounts of $87,056 and $106,903 for 1992 and 1993, respectively.

OPINION

Issue 1. Reasonable Compensation

Section 162(a)(1) provides for a deduction for ordinary and necessary business expenses including a "reasonable allowance for salaries or other compensation for personal services actually rendered". A two-prong test determines deductibility: (1) Whether the amount of compensation is reasonable in relation to services performed, and (2) whether the payment is in fact purely for services rendered. Summit Publg. Co. v. Commissioner, T.C. Memo. 1990-288; sec. 1.162-7(a), Income Tax Regs. The inquiry into reasonableness is a broad one and generally subsumes the inquiry into compensatory intent. Summit Publg. Co. v. Commissioner, supra. Petitioner must show the reasonableness of the compensation. Rule 142(a).

The reasonableness of compensation is a question of fact to be answered by considering and weighing all facts and circumstances of the particular case. Estate of Wallace v.

<u>Commissioner</u>, 95 T.C. 525, 553 (1990), affd. 965 F.2d 1038 (11th Cir. 1992). Case law has provided an extensive list of factors that bear on the determination of reasonableness. <u>Mayson Manufacturing Co. v. Commissioner</u>, 178 F.2d 115, 119 (6th Cir. 1949), affg. a Memorandum Opinion of this Court. No single factor is determinative. <u>Id.</u> In <u>Edwin's, Inc. v. United States</u>, 501 F.2d 675, 677 (7th Cir. 1974), the Court of Appeals for the Seventh Circuit, to which this case is appealable, divided these factors into seven categories: (1) The type and extent of the services rendered; (2) the scarcity of qualified employees; (3) the qualifications and prior earning capacity of the employee; (4) the contributions of the employee to the business venture; (5) the net earnings of the employer; (6) the prevailing compensation paid to employees with comparable jobs; and (7) the peculiar characteristics of the employer's business. For any given position, there will be a range, not unduly narrow, of compensation that could properly be considered "reasonable". <u>Id.</u>

### A. Type and Extent of Services

The first category of factors identified by the Court of Appeals concerns the type and extent of the employee's services for the company. Relevant factors include the employee's position, hours worked, and duties performed. <u>Home Interiors &</u>

Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1158 (1980). Petitioner maintains that Mr. Heitz is involved in every facet of Exacto's business and that he discharged his responsibility through long hours and significant effort. Respondent acknowledges that Mr. Heitz is a valuable employee, but respondent maintains that this fact was taken into account in his determination of reasonable compensation.

Mr. Heitz was indispensable to Exacto's business. He worked 60 to 70 hours per week, performing several functions. Mr. Heitz served as president and chief executive officer, and he supervised sales, marketing, and research and development. In addition, Mr. Heitz assisted in the development of an automated line of spring-making machines and in inventing technical and practical advances in spring packaging. Mr. Heitz was essential to Exacto's success.

B. Scarcity of Qualified Employees

The second factor considered in determining whether compensation is reasonable is the ability of the employer to find a qualified replacement for the employee. Home Interiors & Gifts, Inc. v. Commissioner, supra at 1158. Mr. Heitz is a technical expert in the area of spring design. Spring design is an extremely specialized branch of mechanical engineering, and

there are very few engineers who have made careers specializing in this area.  Mr. Heitz combines his technical expertise with the ability to identify and attract clients and to develop springs to perform a specific function for that client.  As of the years in question, he had established a stable and highly successful pattern of applied expertise in product innovation and development and packaging technology.  It would have been very difficult to replace Mr. Heitz.  See id.

### C.  Qualifications of the Employee

An employee's superior qualifications for his or her position with the business may justify high compensation. Edwin's, Inc. v. United States, supra at 677; Dave Fischbein Manufacturing Co. v. Commissioner, 59 T.C. 338, 352-353 (1972). Mr. Heitz is highly qualified to run Exacto as a result of his education, training, experience, and motivation.  Mr. Heitz has over 40 years of highly successful experience in the field of spring design.

### D.  Contribution of the Employee to the Business

The fourth factor identified by the Court of Appeals concerns the employee's contribution to the success of the business.  An employee's substantial contribution to the employer's success may justify a high level of compensation.

Home Interiors & Gifts, Inc. v. Commissioner, supra at 1146.
Exacto maintains that Mr. Heitz' efforts were of great value to
the corporation, and we agree.

Mr. Heitz has contributed to the success of Exacto in
several ways.  First, he was instrumental in improving the
overall efficiency and quality of Exacto's production process.
Mr. Heitz regularly makes adjustments to Exacto's automated line
of spring-making machines to improve the efficiency of the line
and to reduce the percentage of rejected springs.  Mr. Heitz also
contributes significantly in the area of shipping and product
assembly, having invented several new types of spring packaging.

Perhaps the most valuable service that Mr. Heitz provided to
Exacto was in sales and marketing.  He was very successful at
targeting clients and marketing Exacto's services.  He was
personally responsible for 65 to 70 percent of Exacto's sales
during the years at issue.  From FY 1991 to FY 1994, the period
when Mr. Heitz had assumed sole responsibility for the
administration and operation of the company, Exacto's gross sales
increased from $8,923,374 to $16,162,119.  Mr. Heitz' efforts to
solicit clients played a key role in Exacto's success, and Exacto
was substantially dependent on him.  However, Mr. Heitz was also
being compensated for his sales efforts, in part, by Hickory.  He

received compensation from Hickory of $100,000, $200,000, and $100,000 during Hickory's 1992, 1993, and 1994 fiscal years, respectively. Mr. Heitz' salary from Hickory should be considered in deciding whether his overall compensation was reasonable.

### E. Net Earnings of the Employer

A fifth factor to be considered concerns the net earnings of the employer. The success of the business provides a basis for increased compensation. Summit Publg. Co. v. Commissioner, T.C. Memo. 1990-288. Exacto reported a $193,667 loss in FY 1993 and $73,897 in taxable income in FY 1994. Respondent argues that Exacto's performance, as indicated on its tax returns, does not warrant the compensation that was paid to Mr. Heitz. We agree that the financial success of a corporation is an important factor in determining reasonable compensation. If we measure that success on an after-tax basis in this case, we must consider Exacto's concessions that increase taxable income and enhance its financial performance.

Exacto conceded over $1 million in adjustments in each of the taxable years at issue. The adjustments concern Exacto's classification of capital expenditures as operating expenses, inappropriate or erroneous inventory calculations, and

inappropriate or erroneous deduction of certain bonuses. After these concessions, Exacto's income was over $1 million in each of the taxable years at issue. That level of income in each year would have been after taking into account Mr. Heitz' compensation, no part of which was conceded by petitioner.

### F.  External Comparison

The sixth factor involves a comparison of the employee's salary with salaries paid by similar companies for similar services. Industry standards for compensation are important in determining reasonable compensation. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1330 (5th Cir. 1987), affg. T.C. Memo. 1985-267; sec. 1.162-7(b)(3), Income Tax Regs.

Both respondent and petitioner offered expert testimony and written opinions on the level of reasonable compensation for an executive in a position comparable to Mr. Heitz'. Both experts reached conclusions favorable to the party that had engaged their services, and their reports were designed to support their conclusions. Respondent's expert used inappropriate or unsuitable data to reach a result that understates reasonable compensation, while petitioner's expert applied an inappropriate or unsuitable technique to reach a result that overstates reasonable compensation.

Petitioner's expert was the supervisor of a major accounting firm's compensation consulting department for an 18-State region in the vicinity of petitioner's corporate business location. Petitioner's expert was unable to obtain representative data or other publicly available information on the compensation of executives in the spring industry. He reported that most spring manufacturing companies are privately held. Petitioner's expert relied on published sources from general manufacturing companies for representative data. His survey reflected data from manufacturing companies with gross sales approximating those of Exacto.

Petitioner's expert assumed: (1) That Mr. Heitz performed the following functions for Exacto: President and chief executive officer, top manufacturing executive, top research and development executive, and top sales and marketing executive, and that the estimated market value of these four positions was aggregated in determining reasonable compensation for Mr. Heitz; and (2) that executive compensation was made up of three components: Base salary, bonus, and long-term incentives. Petitioner's expert concluded that the present value of long-term incentives is typically 1.2 times the executive's base salary and that Mr. Heitz' market-based compensation should be within the following parameters:

|  | FY 1993 | | FY 1994 | |
| --- | --- | --- | --- | --- |
|  | 75th Percentile | 90th Percentile | 75th Percentile | 90th Percentile |
| 1. Base salary | $457,700 | $735,600 | $476,400 | $765,700 |
| 2. Total annual comp. | 554,500 | 866,300 | 577,200 | 901,700 |
| 3. Annual bonus comp. (line 2-line 1) | 96,800 | 130,700 | 100,800 | 136,000 |
| 4. Long-term incentive comp. (line 1 x 1.2) | 549,240 | 882,720 | 571,680 | 918,840 |
| 5. Total market-based comp. (lines 2+4) | 1,103,740 | 1,749,020 | 1,148,880 | 1,820,540 |

Finally, petitioner's expert concluded that compensation between the 75th and 90th percentiles is appropriate for an executive of Mr. Heitz' accomplishments, success, and leadership.

We do not accept certain aspects of petitioner's expert's approach. His aggregation approach would result in compensation equal to that of four full-time corporate executives. We have not approved of aggregating salaries for an officer performing multiple roles where each of the four salaries represents full-time performance. Pepsi-Cola Bottling Co., Inc. v. Commissioner, 61 T.C. 564, 569 (1974), affd. 528 F.2d 176 (10th Cir. 1975); Richlands Med. Association v. Commissioner, T.C. Memo. 1990-660, affd. without published opinion 953 F.2d 639 (4th Cir. 1992); Ken Miller Supply, Inc. v. Commissioner, T.C. Memo. 1978-228. Although Mr. Heitz may have performed some of the functions of those four executives, he most assuredly did not perform full-time services in each of the four disciplines. Mr. Heitz' inability to perform the services of four executives is

emphasized by the fact that he spent 10 to 20 percent of his time working for Hickory.

We can accept the general methodology of an expert and reject the expert's ultimate conclusion if the record does not support the conclusion.  Rutter v. Commissioner, 853 F.2d 1267, 1274 (5th Cir. 1988), affg. T.C. Memo. 1986-407; Barry v. United States, 501 F.2d 578, 581-583 (6th Cir. 1974).  In addition, we can decline to follow the opinion of an expert witness if the opinion is contrary to our own judgment.  Barry v. United States, supra at 583.

Respondent relied on an expert in the field of compensation and business valuation.  In his opinion of the reasonable compensation for services rendered by Mr. Heitz to Exacto, he relied on representative data and an investor return analysis approach.  Respondent's expert placed more emphasis on the investor return analysis tailored to the financial statements of Exacto.  An investor return analysis compares a company's after-tax profit to its equity to determine whether an independent investor would be satisfied with the level of return.  Respondent's expert indicated that the minimum required return for an investor in Exacto, given the risks associated with the industry, would be about 13 percent.  Respondent's expert concluded that Exacto's after-tax profit was insufficient to

support the level of compensation that was paid to Mr. Heitz and still provide the minimum required return and that reasonable compensation should, at most, be $592,500 and $621,400 for the fiscal years 1993 and 1994, respectively.  Respondent, however, maintains that reasonable compensation does not exceed the amounts allowed in the notice of deficiency ($380,952 and $400,000 for the fiscal years 1993 and 1994, respectively).

Although we have approved of the use of an investor return analysis in evaluating the reasonableness of compensation, Diverse Indus., Inc. v. Commissioner, T.C. Memo. 1986-84, the analysis here is flawed.  Exacto's concession of over $1 million in adjustments in each of the tax years was not taken into account by respondent's expert in determining Exacto's after-tax profit for purposes of the investor return analysis.  In calculating an investor's return, a company's actual performance, not necessarily its reported underperformance, should be considered.  If Exacto's concessions are taken into account, Exacto's after-tax return on equity would have been over 20 percent for each of the years at issue.

### G.  Characteristics of the Employer's Business

The final category identified by the Court of Appeals for the Seventh Circuit concerns the peculiar characteristics of the employer's business.  Edwin's, Inc. v. United States, 501 F.2d at

677. Respondent argues that several characteristics of Exacto support the conclusion that the level of compensation paid to Mr. Heitz was unreasonable. First, respondent argues that Exacto's low level of dividends is an indication that part of Mr. Heitz' compensation was really disguised dividends. Exacto did not pay dividends from FY 1989 through FY 1994.

A corporation's failure to pay dividends may be a factor in determining the reasonableness of officer compensation. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d at 1324. Corporations, however, are not required to pay dividends. Indeed, shareholders may be equally content with the appreciation of their stock caused, for example, by the retention of earnings. Id. at 1323-1324; Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. at 1162. Shareholder equity increased from $9,000 (Mr. Heitz', Mr. Greene's, and Mr. Quillen's initial capital investment in 1960) to $7,550,000 in 1989. The appreciation in the value of Exacto's stock weakens respondent's argument that the earnings of Exacto were being siphoned out in the form of disguised dividends.

Second, respondent correctly contends that Mr. Heitz was able to influence the amount of his own compensation as he was the majority shareholder and president of Exacto. In such a situation, we must carefully scrutinize the reasonableness of the

compensation.  Owensby & Kritikos, Inc. v. Commissioner, supra at 1324.  Mr. Heitz owned approximately 55 percent of Exacto's common stock, and Mr. Quillen and Mr. Green each owned 20 percent.  During the years in issue, Mr. Heitz' compensation was approved by Mr. Green and Mr. Quillen.  It is more unlikely that Mr. Greene and Mr. Quillen would have approved a substantial "disguised dividend" to Mr. Heitz where they did not receive a substantial dividend or some other benefit as well.  When there is no close relationship between the share of compensation and the share of stock holdings, it may be a persuasive indication that the company is receiving compensable services and that profits are not being siphoned out of the company disguised as salary.  See Mayson Manufacturing Co. v. Commissioner, 178 F.2d at 119-120.

We have considered the factors relevant in deciding reasonable compensation for Mr. Heitz.  On the basis of all the evidence, we hold that reasonable compensation for Mr. Heitz for taxable years ended May 31, 1993 and 1994, is $900,000 and $700,000, respectively.  These amounts are in addition to the salary Mr. Heitz received from Hickory, which we have considered in determining his overall reasonable compensation.

In deciding the above-stated amounts to be reasonable compensation, we have balanced Mr. Heitz' unique selling and

technical ability, his years of experience, and the difficulty of replacing Mr. Heitz with the fact that the corporate entity would have shown a reasonable return for the equity holders, after considering petitioners' concessions.

## Issue 2. Accuracy-Related Penalty: Exacto

The next issue is whether petitioner is liable for accuracy-related penalties pursuant to section 6662(a). Section 6662(a) imposes an accuracy-related penalty of 20 percent on any portion of an underpayment of tax that is attributable to items set forth in section 6662(b). Respondent contends that either negligence or substantial understatement of tax under section 6662(b)(1) and (2) applies in the instant case.

Negligence includes any careless, reckless, or intentional disregard of rules or regulations, any failure to make a reasonable attempt to comply with the provisions of the law, and any failure to exercise ordinary and reasonable care in preparation of a tax return. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982).

Section 6662(b)(2) specifies that a penalty shall be imposed on "Any substantial understatement of income tax." An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $10,000 for a corporation.

Section 6662(d)(2)(B) provides that the amount of the understatement shall be reduced by the portion of the understatement that is attributable to the tax treatment of any item if: (1) There is or was substantial authority for such treatment; or (2) if the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.

Section 1.6662-4(f)(2), Income Tax Regs., provides that the Commissioner may prescribe by revenue procedure the circumstances under which information provided on the return will constitute adequate disclosure for purposes of section 6662. The Commissioner issued Rev. Proc. 93-33, 1993-2 C.B. 470, and Rev. Proc. 94-36, 1994-1 C.B. 682, which describe the requirements for adequate disclosure for purposes of the reasonableness of officer compensation for tax years using 1992 and 1993 tax forms. Petitioner complied with these requirements by providing Mr. Heitz' name, Social Security number, stock ownership, percentage of time devoted to Exacto, and the amount of the compensation on Schedule E of its return for each of the years in issue.[5] Accordingly, petitioner's understatement for FY 1993 was adequately disclosed and will be evaluated only to determine whether there was negligence under section 6662(b)(1).

_____

[5] Petitioner used 1992 and 1993 tax forms for FY 1993 and FY 1994, respectively.

For returns with a due date after December 31, 1993, the item must be adequately disclosed and there must be a reasonable basis for the tax treatment of such item. The test to determine whether there was a reasonable basis for the taxpayer's position is the same standard used to determine whether the taxpayer was negligent under section 6662(b)(1). Sec. 1.6661-3(a)(2), Income Tax Regs. Accordingly, petitioner's understatement for FY 1994 will be evaluated using the negligence standard under section 6662(b)(1).

Respondent determined accuracy-related penalties against all the adjustments made in the notice of deficiency. Petitioner has conceded the penalties as to all adjustments with the exception of the adjustment to the compensation to Mr. Heitz. Considering the facts of this case, we find that petitioner has shown that approximately 70 percent of the amounts claimed for salary and bonuses paid to Mr. Heitz was reasonable. Evaluation of whether petitioner had a reasonable basis in the claimed deductions is a factual pursuit. The range of reasonableness for Mr. Heitz' compensation was particularly difficult to determine in this case given his unique skills and ability. Considering the circumstances of this case, we find that petitioner is not liable for the accuracy-related penalties under section 6662(a) with

respect to the reasonable compensation issue for its 1993 and 1994 fiscal years.

## Issue 3. Interest Income

The next issue for our consideration is whether Mr. and Mrs. Heitz constructively received interest income of $87,056 and $106,903 for the taxable years 1992 and 1993, respectively. In the notice of deficiency, respondent determined that Mr. and Mrs. Heitz constructively received interest income. This interest income represents amounts that were accrued and deducted by Exacto during calendar years 1992 or 1993 but were not actually paid to Mr. and Mrs. Heitz until the following year. Respondent argues that because Mr. Heitz was in control of Exacto, he had the power to compel payment of the interest, and therefore he and his wife constructively received the interest income. Mr. and Mrs. Heitz argue that the doctrine of constructive receipt is inapplicable because Exacto had no funds to make the interest payments, and Mr. Heitz had no discretion to order Exacto to make the interest payments because corporate checks required two signatures. We agree with respondent. To the extent the arguments of petitioners are not addressed herein, we find them to be without merit.

Cash basis taxpayers such as Mr. and Mrs. Heitz must include in their income amounts which they have received, actually or

constructively.  Sec. 1.451-1(a), Income Tax Regs.  It is well established that income is constructively received by a taxpayer when "it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it * * * if notice of intention to withdraw had been given."  Sec. 1.451-2(a), Income Tax Regs.  Whether the taxpayer has the necessary control over the income to constitute constructive receipt is a question of fact.  Willits v. Commissioner, 50 T.C. 602, 612-613 (1968).

We have described in our findings of fact the authority that Exacto vested in Mr. Heitz.  Mr. Heitz was the president and chief executive officer of Exacto and was responsible for overall company finances.  He had the power to cause the interest in question to be paid timely.  As this Court has stated with respect to the doctrine of constructive receipt:

> Respondent contends * * * that no evidence was presented here that petitioner's board of directors had taken any action that would bind the corporation to pay the interest.  To the contrary, we feel that no further corporate action was necessary here.  On the record herein, to require petitioner's board to authorize payment of the interest income at issue as a condition to our finding constructive receipt in this case would be a meaningless requirement on our part and an unnecessary gesture on its part since the corporation had already vested * * * [the employee] with the authority to pay the interest whenever requested by the debenture holders or whenever she determined to credit it to their personal accounts.  * * *  [F.D. Bisset &

Son, Inc. v. Commissioner, 56 T.C. 453, 462-463 (1971); citation omitted.[6]]

It is the right rather than the power to receive income that determines whether such income is constructively received. Id. at 463. However, Mr. and Mrs. Heitz had the right to receive the interest income at the time that it was accrued. Nothing in the record indicates that the interest in question was not subject to their unqualified demands thereafter. Mr. and Mrs. Heitz argue that Mr. Heitz had no discretion to order payment because two signatures were required to validly issue an Exacto check. We find this argument unpersuasive. Mr. and Mrs. Heitz presented no evidence that Mr. Heitz ever requested that a check be issued for the interest payments or that such a request would have been denied. Mr. Heitz had the right and authority to order the payment of interest that had accrued. See Fountain v. Commissioner, 59 T.C. 696, 705-706 (1973).

Mr. and Mrs. Heitz contend that Exacto did not have the funds available to pay the interest in question. On December 31, 1992 and 1993, Exacto held cash, cash equivalents, and marketable securities in the amounts of $2,792,123 and $3,129,900, respectively. Mr. and Mrs. Heitz contend that these liquid

---

[6] Most of the cases discussing the doctrine of constructive receipt with respect to interest income apply to sec. 267. In the cited case, the Commissioner was arguing that there was no constructive receipt of interest income by the employee in order to deny the employer-corporation the corresponding deduction.

assets were needed for an upcoming plant expansion. We recognize that there is no constructive receipt where the payor lacks the funds to make the payments. Estate of Noel v. Commissioner, 50 T.C. 702, 706-707 (1968). However, no evidence was presented that Exacto was indebted to any creditors or was financially impaired during the period in question. General statements concerning future expansions are insufficient to justify not applying the constructive receipt doctrine. Accordingly, there was constructive receipt, and we find for respondent on this issue.

Issue 4. Accuracy-Related Penalty: Mr. and Mrs. Heitz

Respondent determined that Mr. and Mrs. Heitz were liable for penalties under section 6662(a) and (b)(1) for each of the years in issue because they were negligent in failing to include the interest income on their returns. We sustain respondent's determination.

In determining whether Mr. and Mrs. Heitz were negligent in the preparation of their returns, we take into account Mr. Heitz' business experience. Wise v. Commissioner, T.C. Memo. 1997-135. Mr. Heitz, a sophisticated taxpayer, manipulated the timing of the interest payments in order to defer the recognition of income. Accordingly, petitioners Mr. and Mrs. Heitz are liable for the section 6662(a) penalties.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155.</u>