**EXACTO SPRING CORPORATION, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

**No. 99–1011.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 1999.

Decided Nov. 16, 1999.

Robert E. Dallman (argued), Vincent J. Beres, Reinhart, Boerner, VanDeuren, Norris & Rieselbach, Milwaukee, WI, for Petitioner–Appellant.

Tamara W. Ashford (argued), William S. Estabrook, Department of Justice, Tax Division, Appellate Section, Washington, DC, William F. Hammack, Internal Revenue Service, Office of Regional Counsel (Midstates), Dallas, TX, for Respondent–Appellee.

Before POSNER, Chief Judge, and BAUER and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

This appeal from a judgment by the Tax Court, 75 T.C.M. (CCH) 2522 (June 24, 1998), requires us to interpret and apply 26 U.S.C. § 162(a)(1), which allows a business to deduct from its income its "ordinary and necessary" business expenses, including a "reasonable allowance for salaries or other compensation for personal services actually rendered." In 1993 and 1994, Exacto Spring Corporation, a closely held corporation engaged in the manufacture of precision springs, paid its cofounder, chief executive, and principal owner, William Heitz, $1.3 and $1.0 million, respectively, in salary. The Internal Revenue Service thought this amount excessive, that Heitz should not have been paid more than $381,000 in 1993 or $400,000 in 1994, with the difference added to the corporation's income, and it assessed a deficiency accordingly, which Exacto challenged in the Tax Court. That court found that the maximum reasonable compensation for Heitz would have been $900,000 in the earlier year and $700,000 in the later one—figures roughly midway between his actual compensation and the IRS's determination—and Exacto has appealed.

In reaching its conclusion, the Tax Court applied a test that requires the consideration of seven factors, none entitled to any specified weight relative to another. The factors are, in the court's words, "(1) the type and extent of the services rendered; (2) the scarcity of qualified employees; (3) the qualifications and prior earning capacity of the employee; (4) the contributions of the employee to the business venture; (5) the net earnings of the employer; (6) the prevailing compensation paid to employees with comparable jobs; and (7) the peculiar characteristics of the employer's business." 75 T.C.M. at 2525. It is apparent that this test, though it or variants of it (one of which has the astonishing total of 21 factors, *Foos v. Commissioner*, 41 T.C.M. (CCH) 863, 878–79 (1981)), are encountered in many cases, see, e.g., *Edwin's Inc. v. United States*, 501 F.2d 675, 677 (7th Cir.1974); *Owensby & Kritikos, Inc. v. Commissioner*, 819 F.2d 1315, 1323 (5th Cir.1987); *Mayson Mfg. Co. v. Commis-*

*sioner*, 178 F.2d 115, 119 (6th Cir.1949); 1 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates, and Gifts* ¶ 22.2.2, p. 22–21 (3d ed.1999), leaves much to be desired—being, like many other multi-factor tests, "redundant, incomplete, and unclear." *Palmer v. City of Chicago*, 806 F.2d 1316, 1318 (7th Cir. 1986).

To begin with, it is nondirective. No indication is given of how the factors are to be weighed in the event they don't all line up on one side. And many of the factors, such as the type and extent of services rendered, the scarcity of qualified employees, and the peculiar characteristics of the employer's business, are vague.

Second, the factors do not bear a clear relation either to each other or to the primary purpose of section 162(a)(1), which is to prevent dividends (or in some cases gifts), which are not deductible from corporate income, from being disguised as salary, which is. E.g., *Rapco, Inc. v. Commissioner*, 85 F.3d 950, 954 n. 2 (2d Cir.1996). Suppose that an employee who let us say was, like Heitz, a founder and the chief executive officer and principal owner of the taxpayer rendered no services at all but received a huge salary. It would be absurd to allow the whole or for that matter any part of his salary to be deducted as an ordinary and necessary business expense even if he were well qualified to be CEO of the company, the company had substantial net earnings, CEOs of similar companies were paid a lot, and it was a business in which high salaries are common. The multi-factor test would not prevent the Tax Court from allowing a deduction in such a case even though the corporation obviously was seeking to reduce its taxable income by disguising earnings as salary. The court would not allow the deduction, but not because of anything in the multi-factor test; rather because it would be apparent that the payment to the employee was not in fact for his services to the company.

Treas. Reg. § 1.162–7(a); 1 Bittker & Lokken, *supra*, ¶ 22.2.1, p. 22–19.

Third, the seven-factor test invites the Tax Court to set itself up as a superpersonnel department for closely held corporations, a role unsuitable for courts, as we have repeatedly noted in the Title VII context, e.g., *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir.1999), and as the Delaware Chancery Court has noted in the more germane context of derivative suits alleging excessive compensation of corporate employees. *Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1051 (Del.Ch. 1996). The test—the irruption of "comparable worth" thinking (see, e.g., *American Nurses' Ass'n v. Illinois*, 783 F.2d 716 (7th Cir.1986)) in a new context—invites the court to decide what the taxpayer's employees *should* be paid on the basis of the judges' own ideas of what jobs are comparable, what relation an employee's salary should bear to the corporation's net earnings, what types of business should pay abnormally high (or low) salaries, and so forth. The judges of the Tax Court are not equipped by training or experience to determine the salaries of corporate officers; no judges are.

Fourth, since the test cannot itself determine the outcome of a dispute because of its nondirective character, it invites the making of arbitrary decisions based on uncanalized discretion or unprincipled rules of thumb. The Tax Court in this case essentially added the IRS's determination of the maximum that Mr. Heitz should have been paid in 1993 and 1994 to what he was in fact paid, and divided the sum by two. It cut the baby in half. One would have to be awfully naive to believe that the seven-factor test generated this pleasing symmetry.

Fifth, because the reaction of the Tax Court to a challenge to the deduction of executive compensation is unpredictable, corporations run unavoidable legal risks in determining a level of compensation that may be indispensable to the success of their business.

The drawbacks of the multi-factor test are well illustrated by its purported application by the Tax Court in this case. With regard to factor (1), the court found that Heitz was "indispensable to Exacto's business" and "essential to Exacto's success." 75 T.C.M. at 2525. Heitz is not only Exacto's CEO; he is also the company's chief salesman and marketing man plus the head of its research and development efforts and its principal inventor. The company's entire success appears to be due on the one hand to the research and development conducted by him and on the other hand to his marketing of these innovations (though he receives some additional compensation for his marketing efforts from a subsidiary of Exacto). The court decided that factor (1) favored Exacto.

Likewise factor (2), for, as the court pointed out, the design of precision springs, which is Heitz's specialty, is "an extremely specialized branch of mechanical engineering, and there are very few engineers who have made careers specializing in this area," let alone engineers like Heitz who have "the ability to identify and attract clients and to develop springs to perform a specific function for that client. . . . It would have been very difficult to replace Mr. Heitz." *Id.* Notice how factors (1) and (2) turn out to be nearly identical.

Factors (3) and (4) also supported Exacto, the court found. "Mr Heitz is highly qualified to run Exacto as a result of his education, training, experience, and motivation. Mr. Heitz has over 40 years of highly successful experience in the field of spring design." *Id.* And his "efforts were of great value to the corporation." *Id.* at 2526. So factor (4) duplicated (2), and so the first four factors turn out to be really only two.

With regard to the fifth factor—the employer's (Exacto's) net earnings—the Tax Court was noncommittal. Exacto had reported a loss in 1993 and very little taxable income in 1994. But it conceded having taken some improper deductions in those years unrelated to Heitz's salary. After adjusting Exacto's income to remove these deductions, the court found that Exacto had earned more than $1 million in each of the years at issue net of Heitz's supposedly inflated salary.

The court was noncommital with regard to the sixth factor—earnings of comparable employees—as well. The evidence bearing on this factor had been presented by expert witnesses, one on each side, and the court was critical of both. The taxpayer's witness had arrived at his estimate of Heitz's maximum reasonable compensation in part by aggregating the salaries that Exacto would have had to pay to hire four people each to wear one of Heitz's "hats," as chief executive officer, chief manufacturing executive, chief research and development officer, and chief sales and marketing executive. Although the more roles or functions an employee performs the more valuable his services are likely to be, *Dexsil Corp. v. Commissioner*, 147 F.3d 96, 102–03 (2d Cir.1998); *Elliotts, Inc. v. Commissioner*, 716 F.2d 1241, 1245–46 (9th Cir.1983), an employee who performs four jobs, each on a part-time basis, is not necessarily worth as much to a company as four employees each working full time at one of those jobs. It is therefore arbitrary to multiply the normal full-time salary for one of the jobs by four to compute the reasonable compensation of the employee who fills all four of them. Anyway salaries are determined not by the method of comparable worth but, like other prices, by the market, which is to say by conditions of demand and supply. Especially in the short run, salaries may vary by more than any difference in the "objective" characteristics of jobs. An individual who has valuable skills that are in particularly short supply at the moment may command a higher salary than a more versatile, better-trained, and more loyal employee whose skills are, however, less scarce.

The Internal Revenue Service's expert witness sensibly considered whether Heitz's compensation was consistent with Exacto's investors' earning a reasonable

return (adjusted for the risk of Exacto's business), which he calculated to be 13 percent. But in concluding that Heitz's compensation had pushed the return below that level, he neglected to consider the concessions of improper deductions, which led to adjustments to Exacto's taxable income. The Tax Court determined that with those adjustments the investors' annual return was more than 20 percent despite Heitz's large salary. The government argues that the court should not have calculated the investors' return on the basis of the concessions of improper deductions, because when Heitz's compensation was determined the corporation was unaware that the deductions would be disallowed. In other words, the corporation thought that its after-tax income was larger than it turned out to be. But if the ex ante perspective is the proper one, as the government contends, it favors the corporation if when it fixed Heitz's salary it thought there was more money in the till for the investors than has turned out to be the case.

What is puzzling is how disallowing deductions and thus increasing the taxpayer's tax bill could increase the investors' return. What investors care about is the corporate income available to pay dividends or be reinvested; obviously money paid in taxes to the Internal Revenue Service is not available for either purpose. The reasonableness of Heitz's compensation thus depends not on Exacto's taxable income but on the corporation's profitability to the investors, which is reduced by the disallowance of deductions—if a corporation succeeds in taking phantom deductions, shareholders are better off because the corporation's tax bill is lower. But the government makes nothing of this. Its only objection is to the Tax Court's having taken account of adjustments made after Heitz's salary was fixed. Both parties, plus the Tax Court, based their estimates of investors' returns on the after-tax income shown on Exacto's tax returns, which jumped after the deductions were disallowed, rather than on Exacto's real profits,

which declined. The approach is inconsistent with a realistic assessment of the investors' rate of return, but as no one in the case questions it we shall not make an issue of it.

Finally, under factor (7) ("peculiar characteristics"), the court first and rightly brushed aside the IRS's argument that the low level of dividends paid by Exacto (zero in the two years at issue, but never very high) was evidence that the corporation was paying Heitz dividends in the form of salary. The court pointed out that shareholders may not want dividends. They may prefer the corporation to retain its earnings, causing the value of the corporation to rise and thus enabling the shareholders to obtain corporate earnings in the form of capital gains taxed at a lower rate than ordinary income. The court also noted that while Heitz, as the owner of 55 percent of Exacto's common stock, obviously was in a position to influence his salary, the corporation's two other major shareholders, each with 20 percent of the stock, had approved it. They had not themselves been paid a salary or other compensation, and are not relatives of Heitz; they had no financial or other incentive to allow Heitz to siphon off dividends in the form of salary.

Having run through the seven factors, all of which either favored the taxpayer or were neutral, the court reached a stunning conclusion: "We have considered the factors relevant in deciding reasonable compensation for Mr. Heitz. On the basis of all the evidence, we hold that reasonable compensation for Mr. Heitz" was much less than Exacto paid him. 75 T.C.M. at 2528. The court's only effort at explaining this result when Exacto had passed the seven-factor test with flying colors was that "we have balanced Mr. Heitz' unique selling and technical ability, his years of experience, and the difficulty of replacing Mr. Heitz with the fact that the corporate entity would have shown a reasonable return for the equity holders, after consider-

ing petitioners' concessions." *Id.* But "the fact that the corporate entity would have shown a reasonable return for the equity holders" after the concessions is on the *same side* of the balance as the other factors; it does not favor the Internal Revenue Service's position. The government's lawyer was forced to concede at the argument of the appeal that she could not deny the possibility that the Tax Court had pulled its figures for Heitz's allowable compensation out of a hat.

■ The failure of the Tax Court's reasoning to support its result would alone require a remand. But the problem with the court's opinion goes deeper. The test it applied does not provide adequate guidance to a rational decision. We owe no deference to the Tax Court's statutory interpretations, its relation to us being that of a district court to a court of appeals, not that of an administrative agency to a court of appeals. 26 U.S.C. § 7482(a)(1); *Prussner v. United States*, 896 F.2d 218, 224 (7th Cir.1990) (en banc); *Flight Attendants Against UAL Offset v. Commissioner*, 165 F.3d 572, 577 (7th Cir.1999); *Rheinstrom v. Commissioner*, 925 F.2d 1066, 1067–68 and n. 2 (7th Cir.1991); *Wolpaw v. Commissioner*, 47 F.3d 787, 790 (6th Cir.1995); David F. Shores, "Deferential Review of Tax Court Decisions: *Dobson* Revisited," 49 *Tax Lawyer* 629, 659 (1996). The federal courts of appeals, whose decisions do of course have weight as authority with us even when they are not our own decisions, have been moving toward a much simpler and more purposive test, the "independent investor" test. *Dexsil Corp. v. Commissioner, supra*; *Elliotts, Inc. v. Commissioner, supra*, 716 F.2d at 1245–48; *Rapco, Inc. v. Commissioner, supra*, 85 F.3d at 954–55. We applaud the trend and join it.

■ Because judges tend to downplay the element of judicial creativity in adapting law to fresh insights and changed circumstances, the cases we have just cited prefer to say (as in *Dexsil* and *Rapco*) that the "independent investor" test is the "lens" through which they view the seven (or however many) factors of the orthodox test. But that is a formality. The new test dissolves the old and returns the inquiry to basics. The Internal Revenue Code limits the amount of salary that a corporation can deduct from its income primarily in order to prevent the corporation from eluding the corporate income tax by paying dividends but calling them salary because salary is deductible and dividends are not. (Perhaps they should be, to avoid double taxation of corporate earnings, but that is not the law.) In the case of a publicly held company, where the salaries of the highest executives are fixed by a board of directors that those executives do not control, the danger of siphoning corporate earnings to executives in the form of salary is not acute. The danger is much greater in the case of a closely held corporation, in which ownership and management tend to coincide; unfortunately, as the opinion of the Tax Court in this case illustrates, judges are not competent to decide what business executives are worth.

There is, fortunately, an indirect market test, as recognized by the Internal Revenue Service's expert witness. A corporation can be conceptualized as a contract in which the owner of assets hires a person to manage them. The owner pays the manager a salary and in exchange the manager works to increase the value of the assets that have been entrusted to his management; that increase can be expressed as a rate of return to the owner's investment. The higher the rate of return (adjusted for risk) that a manager can generate, the greater the salary he can command. If the rate of return is extremely high, it will be difficult to prove that the manager is being overpaid, for it will be implausible that if he quit if his salary was cut, and he was replaced by a lower-paid manager, the owner would be better off; it would be killing the goose that lays the golden egg. The Service's expert believed that investors in a firm like Exacto would expect a 13 percent return on their investment.

Presumably they would be delighted with more. They would be *overjoyed* to receive a return more than 50 percent greater than they expected—and 20 percent, the return that the Tax Court found that investors in Exacto had obtained, is more than 50 percent greater than the benchmark return of 13 percent.

When, notwithstanding the CEO's "exorbitant" salary (as it might appear to a judge or other modestly paid official), the investors in his company are obtaining a far higher return than they had any reason to expect, his salary is presumptively reasonable. We say "presumptively" because we can imagine cases in which the return, though very high, is not due to the CEO's exertions. Suppose Exacto had been an unprofitable company that suddenly learned that its factory was sitting on an oil field, and when oil revenues started to pour in its owner raised his salary from $50,000 a year to $1.3 million. The presumption of reasonableness would be rebutted. There is no suggestion of anything of that sort here and likewise no suggestion that Mr. Heitz was merely the titular chief executive and the company was actually run by someone else, which would be another basis for rebuttal.

The government could still have prevailed by showing that while Heitz's salary may have been no greater than would be reasonable in the circumstances, the company did not in fact intend to pay him that amount as salary, that his salary really did include a concealed dividend though it need not have. This is material (and the "independent investor" test, like the multifactor test that it replaces, thus incomplete, though invaluable) because any business expense to be deductible must be, as we noted earlier, a bona fide expense as well as reasonable in amount. The fact that Heitz's salary was approved by the other owners of the corporation, who had no incentive to disguise a dividend as salary, goes far to rebut any inference of bad faith here, which in any event the Tax Court did not draw and the government does not ask us to draw.

The judgment is reversed with directions to enter judgment for the taxpayer.

REVERSED.