T.C. Memo. 2005-3

UNITED STATES TAX COURT

MENARD, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JOHN R. MENARD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket Nos. 673-02, 674-02.      Filed January 6, 2005.


    <u>Robert E. Dallman</u>, <u>Vincent J. Beres</u>, and <u>Robert J. Misey</u>,
<u>Jr.</u>, for petitioners.

    <u>Christa A. Gruber</u>, <u>J. Paul Knap</u>, and <u>Michael Calabrese</u>, for
respondent.

---

    [*]This opinion supplements our previously filed opinion in
<u>Menard, Inc. v. Commissioner</u>, T.C. Memo. 2004-207.

SUPPLEMENTAL MEMORANDUM OPINION

MARVEL, Judge:  On October 14, 2004, we received and filed, pursuant to Rule 161,[1] petitioners' motion for reconsideration of our Memorandum Opinion in Menard, Inc. v. Commissioner, T.C. Memo. 2004-207 (Menard I).  Petitioners' motion for reconsideration requests that we reconsider two parts of Menard I:

(1) Our conclusion that John R. Menard's (Mr. Menard) compensation for the taxable year ended (TYE) 1998 was not paid by Menard, Inc. (Menards), purely for Mr. Menard's services;

(2) our ruling that part of Exhibit 17-J, summarizing the compensation of Menards's officers for years before TYE 1991, is not admissible.

With respect to (1), petitioners contend that we misinterpreted the opinion of the Court of Appeals for the Seventh Circuit in Exacto Spring Corp. v. Commissioner, 196 F.3d 833 (7th Cir. 1999), revg. Heitz v. Commissioner, T.C. Memo. 1998-220,[2] in deciding whether the compensation paid to Mr.

_____

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect at all relevant times.

[2]This case is appealable, barring a stipulation to the contrary, to the Court of Appeals for the Seventh Circuit.  We are obligated by Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), to apply the independent investor test articulated by the Court of Appeals in Exacto
(continued...)

Menard during TYE 1998 was purely for services, as required by section 162 and section 1.162-7(a), Income Tax Regs. Petitioners argue that Exacto Spring Corp. eliminated the multifactor test not only for testing whether the compensation was reasonable but also for testing whether the compensation was paid purely for services and that it substituted a bad faith standard for determining whether compensation was paid purely for services.

With respect to (2), petitioners contend that all of Exhibit 17-J is relevant and that we made factual findings inconsistent with our ruling excluding information in Exhibit 17-J dealing with years before TYE 1991.[3] Petitioners allege that we must have relied on the excluded part of Exhibit 17-J to find certain facts and that we should revisit our ruling to correct the mistake.

This Supplemental Memorandum Opinion rejects petitioner's contentions for the reasons set forth below.

### Background

We adopt the findings of fact in Menard I. For convenience and clarity, we repeat below the previously found facts necessary

---

[2](...continued)
Spring Corp. v. Commissioner, 196 F.3d 833 (7th Cir. 1999), revg. Heitz v. Commissioner, T.C. Memo. 1998-220.

[3]Our ruling with respect to Exhibit 17-J is set forth in n.4 of Menard I.

for the disposition of this motion, and we supplement those findings with additional facts as appropriate.

Menards is an accrual basis taxpayer and has a fiscal year ending January 31 for tax and financial reporting purposes. Menards timely filed Form 1120, U.S. Corporation Income Tax Return, for TYE 1998 on which it reported $3.42 billion of gross revenue and $315,326,485 of taxable income.

Menards was incorporated in 1962 in Wisconsin. Since its incorporation, Menards has been primarily engaged in the retail sale of hardware, building supplies, paint, garden equipment, and similar items. Menards has approximately 160 stores in nine Midwestern States and is one of the nation's top retail home improvement chains, third only to Home Depot and Lowe's.

During TYE 1998, Mr. Menard, the controlling shareholder of Menards, served as its president and chief executive officer (CEO). Mr. Menard's compensation for TYE 1998 consisted of the following:

| Item | Amount |
|------|--------|
| Base salary (regular weekly payroll) | $62,400 |
| Base salary (paid in December) | 95,100 |
| 5-percent bonus | 17,467,800 |
| Instant Profit Sharing | 3,017,100 |
| Christmas gift bond | 185 |
| Total | 20,642,585 |

By comparison, the CEOs of Menards's two closest competitors received compensation in TYE 1998 as follows:

| Company | Compensation |
|---------|--------------|
| Home Depot | $2,841,307 |
| Lowe's | 6,054,977 |

For TYE 1998, both Home Depot and Lowe's had substantially greater gross revenue, revenue growth, and net income than Menards, but Menards had the highest return on equity and return on assets of the three companies.

After applying the independent investor test established by the Court of Appeals for the Seventh Circuit in Exacto Spring Corp. v. Commissioner, supra, and after considering evidence of CEO compensation paid by comparable companies as required by section 1.162-7(b)(3), Income Tax Regs., we concluded that Menards's rate of return on equity was sufficient to create a rebuttable presumption that Mr. Menard's compensation for TYE 1998 was reasonable in amount but that the presumption of reasonableness was rebutted by evidence drawn from comparable companies that Mr. Menard's compensation was not reasonable. After evaluating the evidence, we held that Mr. Menard's salary for TYE 1998 was reasonable to the extent of $7,066,912 and allowed Menards a deduction for that amount.

As an alternative basis for our decision, we decided whether Mr. Menard's compensation was payment purely for services rendered or was instead a disguised dividend. In Exacto Spring Corp. v. Commissioner, supra at 835, the Court of Appeals for the Seventh Circuit stated that the "primary purpose of section

162(a)(1)" is to prevent corporations from disguising dividends as salary. The Court of Appeals explained that, in addition to satisfying the independent investor test, for compensation to qualify as a deductible business expense, the compensation must be "a bona fide expense". Id. at 839. The Court of Appeals described as "material" to this inquiry any evidence showing that "the company did not in fact intend to pay * * * [the CEO] that amount as salary, that * * * [the CEO's] salary really did include a concealed dividend though it need not have." Id.

A taxpayer's intent with respect to the payment of compensation is a question of fact that must be decided on the basis of the facts and circumstances. E.g., Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1059 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973). After reviewing the relevant facts and circumstances, we concluded that a portion of Mr. Menard's salary (the amount in excess of $7,066,912) was not paid purely for services. In support of our conclusion, we emphasized several facts. Menards, a closely held corporation, had never paid a dividend. Menards's board of directors awarded Mr. Menard a bonus equal to 5 percent of Menards's net income before taxes without making any effort to evaluate whether the bonus, combined with other components of Mr. Menard's compensation, would result in the payment of excessive and unreasonable compensation. The 5-percent bonus was paid pursuant

to a formula and was subject to a reimbursement agreement that required Mr. Menard to reimburse Menards if any portion of the bonus was disallowed as a deduction. For TYE 1998, the formula resulted in a bonus that, when added to Mr. Menard's other compensation, substantially exceeded the compensation paid to CEOs in comparable companies.

Petitioners timely filed a motion for reconsideration of our opinion. In the motion, petitioners (1) challenged our evidentiary ruling excluding, as irrelevant, the portion of Exhibit 17-J that summarized Menards's officer compensation for taxable years ended before 1991 and (2) challenged our application of the "purely for services" prong of the section 162 test for the deductibility of compensation. In support of their motion, petitioners argued, with respect to Exhibit 17-J, that "other tax years may be relevant to the years in issue by showing a pattern of behavior." With respect to the "purely for services" prong of the section 162 test, petitioners argued that the holding of the Court of Appeals for the Seventh Circuit "requires a finding of bad faith by the taxpayer and there has been no bad faith in this case."

## Discussion

I. Admissibility of Excluded Portion of Exhibit 17-J

Petitioners argue that information regarding Menards's officer compensation for taxable years ended before 1991 may be

relevant as part of a "continuing pattern of activity", but they do not explain how the information has any relevance to the two-prong test for evaluating the deductibility of compensation under section 162.

The Court of Appeals for the Seventh Circuit in Exacto Spring Corp. v. Commissioner, 196 F.3d 833 (7th Cir. 1999), has made it abundantly clear that we must use the independent investor test to ascertain whether a CEO's compensation is reasonable in the first instance. Under the independent investor test, if a hypothetical independent investor would consider the rate of return on his investment in the taxpayer corporation "a far higher return than * * * [he] had any reason to expect", the compensation paid to the corporation's CEO is presumptively reasonable. Id. at 839. That presumption may be rebutted, however, if an extraordinary event was responsible for the company's profitability or if the executive's position was merely titular and his job was performed by someone else. Id. In Menard I, we concluded that the presumption could also be rebutted by evidence that comparable publicly traded corporations paid substantially less compensation to their CEOs than the amount paid by a closely held corporation, and we held that the presumption of reasonableness that attached to Mr. Menard's TYE 1998 compensation had been rebutted by evidence that his

compensation greatly exceeded the compensation paid by Menards's chief competitors to their CEOs.

As respondent points out in his response to petitioners' motion, petitioners make no attempt to explain why evidence of Mr. Menard's compensation for taxable years ended before 1991 has any relevance to our analysis under the independent investor test established in Exacto Spring Corp. The independent investor test focuses on the rate of return on equity for the year the compensation is paid. The presumption of reasonableness created by a qualifying rate of return is rebutted either by evidence that something other than the CEO's services generated or contributed to that year's rate of return or by evidence that the marketplace considered the CEO's compensation for that year to be unreasonable. Petitioners have failed to explain how evidence of Mr. Menard's compensation in taxable years ended before 1991 is relevant to any aspect of the independent investor test. Petitioners also failed to present any argument regarding why this evidence is relevant to the "purely for services" prong of the section 162 test for deducting compensation.

The burden of demonstrating an exhibit's relevance is on the party seeking its admission. Dowling v. United States, 493 U.S. 342 (1990). Moreover, a court has broad discretion to determine the admissibility of evidence based on remoteness in time. Keyes v. School Dist. No. 1, 521 F.2d 465, 473 (10th Cir. 1975). The

parties stipulated that compensation information for TYE January 31, 1991, to January 31, 1998, was admissible, and, in accordance with the parties' stipulation, we admitted that part of Exhibit 17-J containing compensation information for those years. Respondent points out that the issue is not whether historical compensation information is or might be relevant; the issue is how much historical compensation information is admissible. Petitioners have not shown that the ruling excluding that part of Exhibit 17-J containing compensation information for taxable years ended before January 31, 1991, is an abuse of our discretion.

In support of their argument, petitioners contend that we relied in Menard I on the unadmitted part of Exhibit 17-J. In their motion, petitioners focus on two factual statements in Menard I. The first is that Mr. Menard has received an annual bonus since 1973, slip op. at 12, and the second is that the 5-percent bonus generally increased each year, slip op. at 63. Petitioners link the two statements together and claim that the Court must have relied on the unadmitted part of Exhibit 17-J to make them. Petitioners' claim is inaccurate. Our statement that Mr. Menard has received an annual bonus since 1973 is supported by Exhibit 16-J, by the uncontroverted testimony of Al Pitterle, and by paragraph 44 of the stipulation of facts. Our statement that the 5-percent bonus "generally increased each year" is

supported by the admitted part of Exhibit 17-J, which indicated that Mr. Menard's compensation and his 5-percent bonus generally increased each year from TYE January 31, 1991, through January 31, 1998.

Because petitioners have failed to demonstrate (1) that compensation information for taxable years ended before January 31, 1991, is relevant and (2) that we relied on the unadmitted portion of Exhibit 17-J contrary to our ruling, we reject petitioners' arguments with respect to Exhibit 17-J.

II. <u>Bad Faith</u>

Petitioners' argument that <u>Exacto Spring Corp.</u> imposes a "bad faith" requirement for determining whether compensation is a disguised dividend is derived entirely from a single statement in that opinion:

> The fact that * * * [the president/shareholder's salary at issue] was approved by the other owners of the corporation, who had no incentive to disguise a dividend as salary, goes far to rebut any inference of bad faith here, which in any event the Tax Court did not draw and the government does not ask us to draw.

<u>Exacto Spring Corp. v. Commissioner</u>, 196 F.3d at 839. Petitioners conclude from the above-quoted statement that the Court of Appeals for the Seventh Circuit rejected the multifactor test for both prongs of the section 162 compensation test and that the Court of Appeals now requires a showing of bad faith before we can conclude that compensation was not paid purely for services.

We reject petitioners' argument.  We cannot discern any intention on the part of the Court of Appeals to incorporate a bad faith requirement into the analysis of whether compensation is paid purely for services.  The Court of Appeals in <u>Exacto Spring Corp.</u> referenced the two-prong test under section 162 and stated that deductible compensation under section 162 must be both reasonable in amount and a payment purely for services.  <u>Id.</u> at 839.  In addressing the hypothetical case of a CEO who rendered no services to his company yet received a substantial salary, the Court of Appeals stated as follows:

> The multi-factor test would not prevent the Tax Court from allowing a deduction in such a case even though the corporation obviously was seeking to reduce its taxable income by disguising earnings as salary.  The court would not allow the deduction, but not because of anything in the multi-factor test; rather because it would be apparent that the payment to the employee was not in fact for his services to the company.  Treas. Reg. §1.162-7(a); * * *.

<u>Id.</u> at 835.

The Court of Appeals did not reject section 1.162-7, Income Tax Regs.  Instead, as evidenced by the above quotation, the Court of Appeals cites and relies on it for the proposition that compensation that is not paid purely for services is not deductible under section 162.

Section 1.162-7(b)(1), Income Tax Regs., speaks specifically to the "purely for services" prong of the test under section 162.  It states as follows:

> Any amount paid in the form of compensation, but not in fact as the purchase price of services, is not deductible.  An ostensible salary paid by a corporation may be a distribution of a dividend on stock.  This is likely to occur in the case of a corporation having few shareholders, practically all of whom draw salaries.  If in such a case the salaries are in excess of those ordinarily paid for similar services and the excessive payments correspond or bear a close relationship to the stockholdings of the officers or employees, it would seem likely that the salaries are not paid wholly for services rendered, but that the excessive payments are a distribution of earnings upon the stock.  * * *

As respondent points out, there is nothing in Exacto Spring Corp. to indicate that the Court of Appeals now requires a finding of bad faith to support a conclusion that some part of an executive's salary is not purely for services or that the Court of Appeals has rejected section 1.162-7(b)(1), Income Tax Regs. (fact that salaries are higher than those ordinarily paid for similar services is evidence that the salaries are probably not paid solely for services rendered).

Payments to employee/shareholders of closely held corporations merit strict scrutiny.  Exacto Spring Corp. v. Commissioner, 196 F.3d at 838; Dexsil Corp. v. Commissioner, 147 F.3d 96 (2d Cir. 1998), remanding T.C. Memo. 1995-135; sec. 1.162-7(b)(1), Income Tax Regs.  Mr. Menard owned directly 100 percent of the voting stock and 56 percent of the nonvoting stock of Menards.  The only other shareholders were primarily members of his family or trusts established for the benefit of Mr. Menard and family members.  The majority of Menards's board of directors

in TYE 1998 were family members.  From its incorporation in 1973 through and including TYE 1998, Menards had never paid a dividend.  Petitioners have failed to convince us that a finding of bad faith is required before we can decide that a portion of Mr. Menard's compensation was not paid purely for his services as CEO.

III.  Conclusion

For the above-described reasons, we shall deny petitioners' motion for reconsideration.

An appropriate order denying petitioners' motion for reconsideration will be issued.