**WILLIAM L. RUDKIN TESTAMENTARY TRUST, u/w/o Henry A. Rudkin, Michael J. Knight, Trustee, Petitioner–Appellant,**

v.

**COMMISSIONER of INTERNAL REVENUE, Respondent–Appellee.**

**Docket No. 05–5151–AG.**

United States Court of Appeals, Second Circuit.

Argued: May 10, 2006.

Decided: Oct. 18, 2006.

Carol. A. Cantrell, Briggs & Veselka Co., Bellaire, TX, for Petitioner–Appellant.

Gilbert S. Rothenberg, Attorney, Tax Division, United States Dept. of Justice (Eileen J. O'Connor, Assistant Attorney General; Anthony T. Sheehan, Attorney, Tax Division, United States Dept. of Justice, on the brief), Washington, D.C., for Respondent–Appellee.

Gregory F. Taylor, Lisa Bleier, American Bankers Association, Washington, D.C., for Amici Curiae, American Bankers Association and New York, Bankers Association.

Before: SOTOMAYOR and HALL, Circuit Judges.[*]

SOTOMAYOR, Circuit Judge.

The question presented on this appeal is whether investment-advice fees incurred by a trust are fully deductible in calculating adjusted gross income for purposes of

---

[*] Judge Wilfred Feinberg, originally a member of the panel, recused himself subsequent to oral argument. Because the remaining members of the Panel are in agreement, we decide this case in accordance with § 0.14(b) of the rules of this Court.

the Internal Revenue Code ("IRC") under 26 U.S.C. § 67(e)(1) (2000), or whether these fees are deductible only to the extent that they exceed two percent of the trust's adjusted gross income under § 67(a). Petitioner-appellant Michael J. Knight, trustee of the William L. Rudkin Testamentary Trust ("the Trust"), appeals from a decision of the United States Tax Court (Robert A. Wherry, Jr., J.). We affirm the decision of the tax court and hold that a trust's investment-advice fees are subject to the two-percent floor of § 67(a) and therefore not fully deductible in arriving at adjusted gross income.

## BACKGROUND

The parties in this case stipulated to the following facts. Henry A. Rudkin established the William L. Rudkin Testamentary Trust in Connecticut on April 14, 1967, for the benefit of his son William, William's wife and William's descendants and their spouses. The Trust was originally funded with proceeds from the sale of Pepperidge Farm, a food products company, to Campbell Soup Company. In 2000, Michael J. Knight, the trustee, engaged Warfield Associates, Inc. ("Warfield") to provide investment-management advice to the Trust. In its 2000 tax return, the Trust reported total income of $624,816 and claimed a deduction in the amount of $22,241 for investment-management fees paid to Warfield. The Trust claimed this deduction on line 15a of its tax return for "deductions not subject to the 2% floor"; the Trust claimed no deduction on line 15b for "[a]llowable miscellaneous itemized deductions subject to the 2% floor."

On December 5, 2003, the Internal Revenue Service (the "IRS") sent the Trust a notice of deficiency for the year 2000. In the notice, the IRS indicated that it rejected the Trust's itemized deduction for investment-advice fees in the amount of $22,241, and permitted such a deduction only in the amount of $9,780 (that portion of the fees which exceeded two percent of adjusted gross income of $623,050); as a result, the Trust owed $4,448 in taxes. The parties subsequently became aware that the notice contained an error in its calculation of the Trust's adjusted gross income and stipulated that the correct amount was $613,263. The parties therefore agreed that the corresponding deduction for investment-advice fees would be $9,976, but, for reasons not relevant here, agreed further that the resulting deficiency calculated in the December 5 notice would remain unchanged.

The Trust thereafter filed a petition disputing the assessed deficiency. It argued that the trustee's fiduciary duty—specifically, the investment duties defined under the Connecticut Uniform Prudent Investor Act, Conn. Gen.Stat. §§ 45a–541–45a–541l (2005)—required investment advisory services for the proper administration of the Trust's sizable stock portfolio and that the investment-advice fees were therefore fully deductible under § 67(e)(1). Following a trial in the United States Tax Court in Hartford, Connecticut, the tax court held that the "investment advisory fees paid by the trust are not fully deductible under the exception provided in section 67(e)(1) and are deductible only to the extent that they exceed 2 percent of the trust's adjusted gross income pursuant to section 67(a)." *Rudkin Testamentary Trust v. Comm'r*, 124 T.C. 304, 311, 2005 WL 1503675 (2005). This timely appeal followed.

## DISCUSSION

This appeal, which we have jurisdiction to consider under 26 U.S.C. § 7482(a)(1) (2000), presents a question of statutory interpretation. In interpreting a statute, "[w]e start, as always, with the language of the statute." *Williams v. Taylor*, 529 U.S.

420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). "We give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Id.* (internal quotation marks omitted). "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (internal quotation marks omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. 843. "[A]lthough a court appropriately may refer to a statute's legislative history to resolve statutory ambiguity, there is no need to do so" if the statutory language is clear. *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991).

■ In considering the question of statutory interpretation presented on this appeal, we review the legal conclusions of the tax court *de novo. Reimels v. Comm'r,* 436 F.3d 344, 346 (2d Cir.2006); 26 U.S.C. § 7482(a)(1) (providing that the courts of appeals "shall have exclusive jurisdiction to review the decisions of the Tax Court ... in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury"). "In particular, '[w]e owe no deference to the Tax Court's statutory interpretations, its relationship to us being that of a district court to a court of appeals, not that of an administrative agency to a court of appeals.' " *Callaway v. Comm'r,* 231 F.3d 106, 115 (2d Cir.2000) (quoting *Exacto Spring Corp. v. Comm'r,* 196 F.3d 833, 838 (7th Cir.1999) (Posner, C.J.)).

### I. *Statutory Framework*

Under the IRC, "the adjusted gross income of an estate or trust shall be computed in the same manner as in the case of an individual," subject to one exception relevant to this appeal. 26 U.S.C. § 67(e). The exception provides that "the deductions for costs which are paid or incurred in connection with the administration of the estate or trust and which would not have been incurred if the property were not held in such trust or estate" shall be fully deductible from gross income in calculating adjusted gross income. *Id.* § 67(e)(1). In order to understand this provision's operation, it is necessary first to comprehend the manner in which adjusted gross income is calculated for individuals.

Section 1 of the IRC imposes a tax on all "taxable income" of individuals and trusts. 26 U.S.C. § 1. In calculating taxable income, a taxpayer must first determine the amount of "gross income," which is defined as "all income from whatever source derived." *Id.* § 61(a). The taxpayer then arrives at "adjusted gross income" by subtracting from gross income certain "above-the-line" deductions, such as trade and business expenses and losses from the sale of property. *Id.* § 62(a). Finally, "taxable income" is calculated by subtracting from adjusted gross income any "itemized" (or "below-the-line") deductions. *Id.* § 63. In the case of an individual, "below-the-line" deductions include, *inter alia,* "all the ordinary and necessary expenses paid or incurred during the taxable year ... for the management, conservation, or maintenance of property held for the production of income." *Id.* § 212.

Again in the case of an individual, "the miscellaneous itemized deductions [i.e., "below-the-line" deductions] for any taxable year shall be allowed only to the extent that the aggregate of such deduc-

tions exceeds 2 percent of adjusted gross income." *Id.* § 67(a). Stated differently, the rule creates a "two-percent floor" for an individual's itemized deductions of the sort at issue here. Section 67(b) exempts from the two-percent floor certain specifically enumerated itemized deductions. *Id.* § 67(b). Investment-advice fees are generally treated as itemized deductions under § 212. 26 C.F.R. § 1.212–1(g) (specifying the circumstances in which "[f]ees for services of investment counsel ... are deductible under section 212"). They are not listed in § 67(b), so are therefore not exempt from the two-percent floor established by § 67(a). Temp. Treas. Reg. § 1.67–1T(a)(1)(ii) (1988) (stating that "investment advisory fees" are subject to the two-percent floor of § 67(a)).

As noted, under § 67(e), trusts are generally subject to the same rules for calculating adjusted gross income that apply to individuals, with one exception that is relevant to this appeal. A trust's costs are fully deductible, rather than subject to the two-percent floor, if they satisfy both of the following two requirements: (1) they are "paid or incurred in connection with the administration of the ... trust"; and (2) they "would not have been incurred if the property were not held in such trust." 26 U.S.C. § 67(e)(1). There is no dispute here that the investment-advice fees at issue meet the requirement of the first clause, that is, that the fees Knight paid to Warfield were incurred in connection with the administration of the Trust. Instead, the issue presented here, on which some of our sister circuits have disagreed, is whether the investment-advice fees also satisfy the requirement of the second clause of § 67(e)(1) and therefore are fully

deductible without regard to the two-percent floor of § 67(a).

## II. *The Circuit Split*

The Sixth Circuit was the first federal court of appeals to consider the question presented here. It held that "the investment advisor fees paid by the Trust were costs incurred because the property was held in trust, thereby making them eligible for the § 67(e) exception and not subject to the base of two percent of adjusted gross income." *O'Neill v. Comm'r,* 994 F.2d 302, 304 (6th Cir.1993). The Sixth Circuit reasoned that because a trustee has a fiduciary duty to manage trust assets as a "prudent investor," investment-advisory fees are "necessary to" the trust's administration and "caused by" the fiduciary duty of the trustee. *Id.* The court reasoned further that although individual investors often incur costs for investment advice, "they are not *required* to consult advisors and suffer no penalties or potential liability if they act negligently for themselves." *Id.* In short, *O'Neill* established the rule that a trust's costs attributable to the trustee's fiduciary duty, and not required outside the administration of trusts, fall within the § 67(e)(1) exception and are therefore fully deductible.[1]

The Federal Circuit rejected this reasoning in *Mellon Bank, N.A. v. United States,* 265 F.3d 1275 (Fed.Cir.2001). In *Mellon Bank,* the court held that the second clause of § 67(e)(1) "serves as a filter" with respect to the first clause and "treats as fully deductible only those trust-related administrative expenses that are unique to the administration of a trust and not customarily incurred outside of trusts." *Id.*

---

**1.** The American Bankers Association and the New York Bankers Association, appearing in this case as *amici curiae,* advocate the position adopted by the Sixth Circuit. They contend that investment-advice fees incurred by a trustee are fully deductible under the statute "because the prudent execution of the duties imposed upon a trustee rendered it necessary to obtain investment advisory services."

at 1280–81. Because "[i]nvestment advice and management fees are commonly incurred outside of trusts," the court reasoned, "these costs are *not* exempt under section 67(e)(1) and are required to meet the two percent floor of section 67(a)." *Id.* at 1281. The Federal Circuit also found its construction to be consistent with the statute's legislative history. *Id.* It concluded by noting that the trust's reading of the statute, which would find all costs arising out of the trustee's fiduciary duties to fall within the second clause of § 67(e)(1), rendered that clause superfluous "because any costs associated with a trust will always be deductible." *Id.*

The Fourth Circuit subsequently joined the Federal Circuit in holding that investment-advice fees incurred by a trust are subject to the two-percent floor of § 67(a). *Scott v. United States*, 328 F.3d 132, 140 (4th Cir.2003). Noting that the "text is clear and unambiguous," the Fourth Circuit stated that "trust-related administrative expenses are subject to the 2% floor if they constitute expenses commonly incurred by individual taxpayers." *Id.* at 139–40. Applying this rule, the court concluded that because investment-advice fees are commonly incurred outside the context of trust administration, they are subject to the two-percent floor. *Id.* The court noted, however, that "[o]ther costs ordinarily incurred by trusts, such as fees paid to trustees, expenses associated with judicial accountings, and the costs of preparing and filing fiduciary income tax returns, are not ordinarily incurred by individual taxpayers, and they would be fully deductible under the exception created by § 67(e)." *Id.* These costs, the court explained, are "solely attributable to a trustee's fiduciary duties, and as such are fully deductible under § 67(e)." *Id.* Stating a rationale similar to the Federal Circuit's in *Mellon Bank*, the court said that to find a trust's investment-advice fees to be fully deduct-ible would lead to the conclusion that "[a]ll trust-related administrative expenses could be attributed to a trustee's fiduciary duties," rendering the second clause of § 67(e)(1) meaningless. *Id.*

### III. *Analysis*

The Trust contends that the Sixth Circuit construed § 67(e)(1) correctly and that the Federal and Fourth Circuits interpreted the provision inconsistently with both its plain language and legislative history. The Trust's principal textual argument is that the second clause of § 67(e)(1) creates a "but for" causation test, excluding from full deduction only those costs which would have been incurred even in the absence of the trust's ownership of the property, i.e., without the trustee. The Trust also relies on the drafting history of § 67(e)(1) to make the somewhat different argument that by enacting that particular section, Congress intended only to prevent trusts from fully deducting those administrative expenses incurred by pass-through entities in which they had invested. For the reasons that follow, we reject both arguments.

#### A. *Statutory Language*

■ The Trust reads § 67(e)(1) to reflect Congress's intent to allow a full deduction for the administrative costs of a trust that are attributable to the fiduciary duty of the trustee. The Trust argues that the statute sets forth a "but for" causal test: if the cost would not have been incurred without the trustee, then it is attributable to the trustee's performance of its fiduciary duty and is thus fully deductible under § 67(e)(1). According to the Trust, therefore, the second prong of § 67(e)(1) requires no consideration of whether a generic individual owner of the same assets may have incurred the cost at issue. Rather, the Trust contends that the causation test "plainly" entails "a simple

exercise of removing the trustee from the property and seeing which costs remain and which ones disappear without him." The Trust points to specific statutory language in advancing this view. It reads the statute's use of the language "such trust" to refer to the specific trust under consideration, its trustee and that trustee's duties, rather than to the generic trust of § 67(e)'s introductory language, that is, a trust of the type to which § 67(e) is applicable.[2] Under the Trust's construction, the statute requires consideration of whether a particular cost would have been incurred if the trustee had never existed. It would ignore, however, how an individual property owner managing the same assets would have acted. For the following reasons, we find the Trust's interpretation unreasonable.

As an initial matter, had Congress intended to create a causation test of the type the Trust advances, which disregards what an individual asset owner may have done if the assets were not held in trust, it could have done so in language clearly expressing that intent. Such a "but for" causation test, however, is not apparent from the text's "ordinary, common meaning." *See Luyando v. Grinker*, 8 F.3d 948, 950 (2d Cir.1993) (noting we interpret a statute according to the "ordinary, common meaning" of the statute's "plain language"). On the contrary, the phrase "if the property were not held in such trust" more logically directs the inquiry away from the trust and back toward the hypothetical ownership of the property by an individual. That is, the introductory language of § 67(e) takes as its point of reference the rules that apply to individual taxpayers, and by using the phrase, "if the property were not held in such trust," Congress has aimed the inquiry at the costs that a hypothetical individual property owner could incur with respect to that property. We therefore agree with the Fourth Circuit's statement in *Scott* that the second prong of § 67(e)(1) does not ask whether the costs at issue are commonly incurred in the administration of trusts or are incurred as a result of a particular trustee's fiduciary duty. It focuses the inquiry, instead, on the hypothetical situation where the assets are in the hands of an individual. *See* 328 F.3d at 140.

Although the statutory language directs the inquiry toward the counterfactual condition of assets held individually instead of in trust, the statute does not require a subjective and hypothetical inquiry into whether a particular, individual asset owner *would* have incurred the particular cost at issue. Nothing in the statute indicates that Congress intended the test for the exception to the two-percent floor to give rise to factual disputes about whether an individual asset owner (or owners) is insufficiently financially savvy or the assets sufficiently large such that he or she unquestionably would have sought investment advice. Instead, the plain meaning of § 67(e)(1)'s second clause excludes from full deduction those costs of a type that

---

**2.** The Trust thus contends that the word "such" in the statute, emphasized below, refers to "the" estate or trust mentioned in the first clause of § 67(e)(1), also emphasized below, which it understands to refer not to the generic estate or trust mentioned in the introductory text of § 67(e)(1), but to the particular trust at issue.

For purposes of this section, the adjusted gross income of an estate or trust shall be computed in the same manner as is the case of an individual, except that -(1) the deductions for costs which are paid or incurred in connection with the administration of *the* estate or trust and which would not have been incurred if the property were not held in *such* trust or estate. . . .

U.S.C. § 67(e)(1) (emphasis added).

*could* be incurred if the property were held individually rather than in trust. In other words, for the trust to avoid the two-percent floor and have advantage of the full deduction, the plain language of the statute requires certainty that a particular cost "would not have been incurred" if the property were not held in trust.

For that reason, the statute demands not a subjective and hypothetical inquiry, but rather an objective determination of whether the particular cost is one that is peculiar to trusts and one that individuals are incapable of incurring. In other words, the statute sets an objective limit on the availability of a full deduction and, as the source of that limit, looks to those costs that individual property holders are capable of incurring and permitted to deduct from adjusted gross income. For example, the fact that investment-advice fees are subject to the two-percent floor under regulations applicable to individual taxpayers proves the fees to be a cost that individual taxpayers are capable of incurring. Investment-advice fees and other costs that individual taxpayers are capable of incurring are, therefore, not fully deductible pursuant to § 67(e)(1) when incurred by a trust. By contrast, costs that individuals are incapable of incurring, like "fees paid to trustees, expenses associated with judicial accountings, and the costs of preparing and filing fiduciary income tax returns," *Scott,* 328 F.3d at 140, are fully deductible.

We thus join the Federal and Fourth Circuits in holding that § 67(e)(1) does not exempt from § 67(a)'s two-percent floor investment-advice fees incurred by trusts. We disagree, however, with their statement that costs "not *customarily* incurred outside of trusts" are the ones not subject to the floor, *Mellon Bank,* 265 F.3d at 1281 (emphasis added); *Scott,* 328 F.3d at 139–

40 (citing *Mellon Bank* and stating that § 67(e)(1) subjects "expenses *commonly* incurred by individual taxpayers" to the two-percent floor (emphasis added)), because, as explained above, we believe § 67(e)(1) is more restrictive than that. While the Federal and Fourth Circuits' approach properly focuses the inquiry on the hypothetical situation of costs incurred by individuals as opposed to trusts, that inquiry into whether a given cost is "customarily" or "commonly" incurred by individuals is unnecessary and less consistent with the statutory language. We believe the plain text of § 67(e) requires that we determine with certainty that costs could not have been incurred if the property were held by an individual. We therefore hold that the plain meaning of the statute permits a trust to take a full deduction only for those costs that could not have been incurred by an individual property owner.

In so doing, we reject the Trust's argument that, in construing § 67(e)(1) to refer to costs incurred by a generic trust rather than the particular trust under consideration, we must ignore the word "such" in the second clause of § 67(e)(1). The statute's introductory language references a generic "estate or trust" by stating that, "[f]or the purposes of this section, the adjusted gross income of *an* estate or trust shall be computed in the same manner as in the case of an individual," subject to the exception under consideration on this appeal. 26 U.S.C. § 67(e) (emphasis added). The first clause of § 67(e)(1) next uses the different phrase "*the* estate or trust" in setting forth the condition that, to qualify for a full deduction, a cost must be "paid or incurred in connection with the administration of the estate or trust." *Id.* § 67(e)(1) (emphasis added). The second clause of § 67(e)(1) refers to "*such* estate or trust" in establishing that an administrative cost is fully deductible only if it "would not have been incurred if the prop-

erty were not held in *such* trust or estate." *Id.* (emphasis added). For the following reason, we agree with the Commissioner that, as used here, "such trust" is best understood as referring to the generic trust of § 67(e)'s introductory language and not to any actual, particular trust that incurred a cost subject to scrutiny. In the first clause of § 67(e)(1), the language "the estate or trust" plainly refers not to a particular trust under consideration, but to the generic estate or trust mentioned in the provision's introductory language. The phrase "such trust or estate" of § 67(e)(1)'s second clause also refers, therefore, to the generic estate or trust mentioned in both the introductory language of § 67(e) and in the first clause of § 67(e)(1). Moreover, as explained, nothing in the statute indicates that Congress intended to make applicability of the deduction dependent on what costs are peculiarly incurred by a specific trust.

■ Even if the statute's meaning were not plain and the Trust's alternative interpretation were not unreasonable, canons of statutory interpretation favor the Commissioner's interpretation of the statute. *See Natural Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir.2001) ("If the plain meaning of a statute is susceptible to two or more reasonable meanings, i.e., if it is ambiguous, then a court may resort to the canons of statutory construction."). Specifically, our conclusion accords with the canon of statutory interpretation requiring that when the statute is ambiguous, we resolve interpretive disputes as to the availability of a tax deduction in favor of the government. "It is a common principle of taxation that where doubt exists, courts should resolve deductions in favor of the government: 'Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.' " *Holmes v. United States*, 85 F.3d 956, 961 n. 3 (2d Cir.1996) (quoting *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934)).

### B. *Legislative History*

■ The Trust also invokes the statute's legislative history to support a construction that is somewhat different from, and not obviously consistent with, its textual argument.[3] It contends that the drafting history indicates that Congress added the second clause of § 67(e)(1) in order to restrict a trust's use of pass-through entities to avoid the two-percent floor of § 67(a) and not to limit the deductibility of any other administrative costs of a trust. Because we find the statute's text "clear and unambiguous," we need not address the Trust's legislative history arguments. *See Scott*, 328 F.3d at 139. Even if it were not, however, we disagree that this history supports the Trust's proposed interpretation of the statute discussed above or provides any reason to depart from our reading of the statute's meaning.[4]

Pass-through entities, such as partnerships, S corporations, common trust funds,

3. While the Trust's textual argument is essentially that fiduciary administrative costs are exempt from the two-percent floor, its argument based on the drafting history, as explained below, is that the second clause of § 67(e)(1) makes only the indirect administrative costs of a pass-through entity in which a trust has invested subject to the two-percent floor. If the second clause were so limited, one might think that the statute exempts from the two-percent floor more than simply fiduciary administrative costs. On this view, the statute would appear to exempt from the two-percent floor all costs incurred in connection with the administration of a trust except a trust's share of the administrative costs of a pass-through entity owned, at least in part, by the trust.

4. We note that the legislative history upon which the Federal Circuit relied in *Mellon*

and nonpublic mutual funds, generally do not pay income taxes at the entity level, but instead pass their tax liabilities on to ultimate taxpayers—generally individuals. *See* Temp. Treas. Reg. 1.67–2T (1988). In the Tax Reform Act of 1986, Congress sought to eliminate the ability of wealthy taxpayers to avoid the two-percent floor of § 67(a) by funneling income through pass-through entities. *See Issues Relating to Passthrough Entities: Hearings Before the Subcomm. on Select Revenue Measures of the H. Comm. on Ways and Means on H.R. 1658, H.R. 2571, H.R. 3397, H.R. 4448,* 99th Cong. 1 (1986) (stating the Subcommittee's intent to scrutinize the role of pass-through entities in "facilitating and encouraging tax avoidance techniques"). If there were no restrictions on such entities, an individual could deduct the full cost of investment advice, for example, by placing his or her investments in a pass-through entity, deducting the cost of the advice at the entity level and reporting only the net investment income on his or her individual tax return. Congress addressed this problem by enacting § 67(c), which provides, *inter alia,* that regulations shall be issued "which prohibit the indirect deduction through pass-thru entities of amounts which are not allowable as a de-

duction if paid or incurred directly by an individual." 26 U.S.C. § 67(c)(1). Congress also provided, however, that this rule, except as provided in regulations, shall not apply to trusts. *Id.* § 67(c)(3)(B).

At the time Congress added § 67(c), the bill provided that all costs incurred in connection with the administration of a trust were exempted from the two-percent floor of § 67(a) and thus permitted trusts to deduct fully all of their administrative costs. Section 67(e)(1)'s second clause was not included in the versions of the bill that emerged initially from the House and Senate, but was added only in the joint conference draft.[5] Accordingly, under the draft language of § 67(e) at the time Congress added § 67(c), a trust, unlike an individual, could fully deduct the cost of investment advice and other administrative expenses incurred by pass-through entities in which the trust had invested. To correct this problem, the Trust argues, Congress added the second clause of § 67(e)(1): trusts and estates could fully deduct only those administrative costs that "would not have been incurred if the property were not held in such trust or estate." According to the Trust, this language was intended to create a limited exception within an exception. Although trust income is to be calcu-

---

*Bank,* 265 F.3d at 1281, chiefly H.R.Rep. No. 99–426 (1985) and S.Rep. No. 99–313 (1986), predates the introduction of § 67(e)(1)'s second clause, and this history relates to a bill that treated all costs incurred in the administration of a trust or an estate as fully deductible. Thus, unlike the Federal Circuit, we do not view this history as persuasive evidence of the meaning of § 67(e)(1).

5. The House bill included the following language:
   (c) DETERMINATION OF ADJUSTED GROSS INCOME IN CASE OF ESTATES AND TRUSTS.—For purposes of this section, the adjusted gross income of an estate or trust shall be computed in the same manner as in the case of an individual, except that the deductions for costs which

are paid or incurred in connection with the administration of the estate or trust shall be treated as allowable in arriving at adjusted gross income.
H.R. 3838, 99th Cong. § 67(c) (1985). The Senate Committee on Finance did not amend this provision, but expressed the view that "the bill attempts to reduce the benefits arising from the use of trusts ... by revising the rate schedule applicable to trusts." S.Rep. No. 99–313, 99th Cong. 868 (1986). The second clause of § 67(e)(1) appeared for the first time in the final version of the bill that emerged in the Joint Conference Agreement. *See* H.R.Rep. No. 99–841, vol. II, at 34 (1986) (Conf.Rep.), *reprinted at* 1986 U.S.C.C.A.N. 4075, 4122.

lated in the same way as individual income, administrative costs incurred by a trust are not subject to the two-percent floor of § 67(a), except for those administrative costs incurred by a pass-through entity in which the trust has invested (which are subject to the floor).[6]

If Congress's only purpose had been to restrict the ability of trusts as ultimate taxpayers to deduct fully their share of the administrative costs of pass-through entities in which they had invested, however, it could have drafted the second clause of § 67(e)(1) more narrowly. It could have, for example, permitted full deductibility for those administrative costs "which are not pass-through costs restricted under section 67(c)." Instead, Congress chose

---

**6.** The Trust relies most heavily in making this argument on the House Conference Report, which provides some indication that the second clause of § 67(e)(1) was drafted to address indirect deductions through pass-through entities. The Trust relies on the following passage from the Report:

> Pursuant to Treasury regulations, the [two-percent] floor is to apply with respect to indirect deductions through pass-through entities (including mutual funds) other than estates, nongrantor trusts, cooperatives, and REITs. The floor also applies with respect to indirect deductions through grantor trusts, partnerships, and S corporations by virtue of present-law grantor trust and pass-through rules. *In the case of an estate or trust, the conference agreement provides that the adjusted gross income is to be computed in the same manner as in the case of an individual, except that the deductions for costs that are paid or incurred in connection with the administration of the estate or trust and that would not have been incurred if the property were not held in such trust or estate are treated as allowable in arriving at adjusted gross income and hence are not subject to the floor.* The regulations to be prescribed by the Treasury relating to application of the floor with respect to indirect deductions through certain pass-through entities are to include such reporting requirements as may be necessary *to effectuate this provision.*

the broader language of § 67(e)(1). Thus, notwithstanding the narrow purpose the Trust attributes to Congress in enacting the second clause of § 67(e)(1), the broad statutory language is the best indication that Congress intended to treat those administrative costs that would be subject to the two-percent floor when incurred by an individual as similarly subject to that floor when incurred by a trust. Nothing in the legislative history suggests a clearly expressed congressional intent contrary to the plain meaning of the statute itself.[7] *See Toibb*, 501 U.S. at 162, 111 S.Ct. 2197.

## CONCLUSION

Because § 67(e)(1) unambiguously exempts from the two-percent floor of

---

H.R.Rep. No. 99–841, at 34, *reprinted at* 1986 U.S.C.C.A.N. 4075, 4122 (emphasis added).

**7.** The Trust also argues that its reading of the statute in light of the legislative history eliminates the superfluity problem that the Federal and Fourth Circuits, as well as the Commissioner in this case, identified. The Federal and Fourth Circuits both concluded that to interpret § 67(e)(1)'s second clause similarly to the "but for" causation test the Trust advances here renders that clause superfluous because "[a]ll trust-related administrative expenses could be attributed to a trustee's fiduciary duties." *Scott*, 328 F.3d at 140; *Mellon Bank*, 265 F.3d at 1281 ("Under Mellon's construction, the second prerequisite of section 67(e)(1) would be rendered superfluous because any costs associated with a trust will always be deductible."). We do not adopt the Federal and Fourth Circuits' view. The Trust contends that the second clause is necessary to filter out a specific subset of the administrative costs described in the first clause— those incurred by pass-through entities in which a trust has invested. Assuming arguendo that such costs are "incurred in connection with the administration" of a trust for purposes of the statute (and satisfy the first clause), they are not caused by the trustee's fiduciary duty (and so fall outside the Trust's reading of the second clause). We find it difficult to conceive that a trustee's fiduciary duty could require that trust assets be invested in a particular vehicle.

§ 67(a) only those costs incurred by a trust that could not have been incurred if the property were held by an individual, we conclude that the Trust's investment-advice fees are deductible only to the extent that they exceed two percent of the Trust's adjusted gross income. This conclusion follows from the fact that individual property owners obviously can incur investment-advice fees and from the regulation explicitly including investment-advice fees among an individual's miscellaneous itemized deductions subject to § 67(a)'s two-percent floor. *See* Temp. Treas. Reg. § 1.67–1T(a)(1)(ii). Accordingly, the investment-advice fees the Trust paid to Warfield do not meet the requirements of § 67(e)(1) and therefore are not fully deductible. For the foregoing reasons, we AFFIRM the judgment of the tax court.